**APPAREL ART INTERNATIONAL, INC., Plaintiff, Appellant,**

v.

**Leon JACOBSON, et al., Defendants, Appellees.**

No. 91–2070.

United States Court of Appeals, First Circuit.

Heard March 2, 1992.

Decided June 26, 1992.

Freddie Perez–Gonzalez with whom Woods, Rosenbaum, Luckeroth & Perez–Gonzalez, Hato Rey, P.R., was on brief, for plaintiff, appellant.

Marc Lamer with whom Kostos and Lamer, P.C. Philadelphia, Pa., was on brief, for defendants, appellees.

Before BREYER, Chief Judge, FEINBERG,* Senior Circuit Judge, and CYR, Circuit Judge.

BREYER, Chief Judge.

The appellant, a subcontractor, brought this lawsuit under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, against a contractor. The subcontractor claimed that the contractor, by defrauding the federal government in various ways, injured the subcontractor as well as the government. The district court dismissed the suit on the ground that the subcontractor had already litigated its RICO claim in an earlier arbitration proceeding; hence principles of res judicata barred the present action. We affirm the district court's dismissal, but for a different reason. *See Rodriguez–Antuna v. Chase Manhattan Bank Corp.*, 871 F.2d 1, 3 (1st Cir.1989) (court of appeals may affirm judgment on any ground supported by record, whether or not considered by district court) (citing cases). In our view, the subcontractor's RICO complaint fails to allege the "pattern of racketeering activity" that the RICO statute requires. *See* 18 U.S.C. § 1961(5); *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 236–43, 109 S.Ct. 2893, 2898–2902,

* Of the Second Circuit, sitting by designation.

106 L.Ed.2d 195 (1989) (explicating "pattern" requirement).

## I

### Background

#### A

### The Complaint's RICO Allegations

The Racketeer Influenced and Corrupt Organizations Act permits "any person injured in his business or property," 18 U.S.C. § 1964(c), by "a pattern of racketeering activity," 18 U.S.C. § 1962, (including at least two acts of certain specified crimes, 18 U.S.C. § 1961(5)) to obtain treble damages from the racketeers. 18 U.S.C. § 1964(c). The subcontractor's complaint says that the contractor engaged in a "pattern of racketeering activity," primarily with the objective of obtaining a particular Defense Department contract to make camouflaged chemical protection suits.

The complaint specifically alleges the following unlawful activity:

1. *Bribes.* In late 1984 or early 1985, the contractor, Amertex International, provided a Defense Department contracting officer with lodging on three vacation trips in Puerto Rico, a free boat trip and airplane trip, and $25,000 in cash. In return, in February 1985, the officer awarded Amertex a $96 million chemical protection suit contract.

2. *False Statements.* During approximately the same time period, Amertex, in order to qualify for the contract, falsely told the Defense Department that it was a small business, that is, that it had fewer than 500 employees. Later, it tried to cover up by making it appear that various additional employees worked for an independent "temporary personnel" agency.

3. *Obtaining Confidential Government Information.* At about the same time, the president of Amertex, Leon Jacobson, obtained confidential information that the Defense Department intended to amend the terms of the chemical protection suit contract, making it more profitable than it appeared to be.

4. *Failure to Disclose.* After Amertex obtained the contract, it awarded a subcontract to the plaintiff, Apparel Art International. When doing so, Amertex did *not* tell Apparel about the bribes and lies that would (and did) lead to cancellation of the main contract by the Defense Department.

5. *Fraudulent Conveyance.* Amertex's bribes came to light, the Defense Department cancelled the contract, Apparel brought an arbitration proceeding (as provided in the subcontract), and Apparel recovered a damage award of $338,000. In the meantime, Amertex fraudulently conveyed its assets to its owners, and to others, in order to prevent Apparel from reaching those assets to satisfy the award.

As a result of this "pattern of racketeering activity," says Apparel's complaint, Amertex, and certain of its owners and officers, harmed Apparel, in the amount of approximately $4,817,750 (or, $14,453,250, when trebled).

#### B

### Key Procedural Events

The key procedural events in this litigation include the following:

1. *November 1986.* Apparel brought its arbitration proceeding, in which, as we have said, it obtained an award for $338,000.

2. *September 1989.* Apparel sued in federal district court to confirm the arbitrator's award. *See* 9 U.S.C. § 9.

3. *April 1990.* The federal court confirmed the award.

4. *June 1990.* Apparel filed the present RICO complaint (in the same federal district court, but assigned to a different judge).

5. *August 1990.* The RICO defendants filed a motion to dismiss the RICO complaint on the grounds that it did not allege a "pattern of racketeering activity" and failed to satisfy certain other statutory requirements.

6. *August 1991.* The court dismissed the RICO complaint for a reason that the parties had not argued, namely that, giv-

en the previous arbitration proceeding, principles of res judicata barred the present RICO claim.

The plaintiff, Apparel, now appeals the dismissal, arguing that the arbitrators did not permit it to assert its RICO claim in the arbitration; hence, it should be able to assert the claim in a second, federal court action. *See, e.g., Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480–81 & n. 22, 102 S.Ct. 1883, 1897 & n. 22, 72 L.Ed.2d 262 (1982) (*res judicata* and collateral estoppel not applicable against party that did not have opportunity to litigate claim); *Mitchell v. Humana Hospital–Shoals*, 942 F.2d 1581, 1582–83 & n. 1 (11th Cir.1991) (same).

## II

### *Dismissal of the RICO Complaint— Lack of a "Pattern"*

■ Apparel's claim that the district court improperly applied res judicata raises a very substantial issue. However, we need not decide it because we can affirm the district court's decision on the different ground that the defendants asserted, and the parties fully briefed, in the court below. *See Rodriguez–Antuna*, 871 F.2d at 3. The RICO statute requires a plaintiff to show 1) two or more "acts of racketeering activity," that is, acts that violate certain specified federal statutes, *see* 18 U.S.C. § 1961(1), such as the mail and wire fraud statutes, 18 U.S.C. §§ 1341 & 1343, the Travel Act, 18 U.S.C. § 1952, or the Hobbs Act, 18 U.S.C. § 1951; and 2) that these acts, taken together, demonstrate a *"pattern* of racketeering activity." 18 U.S.C. § 1961(5) (emphasis added). Apparel's complaint alleges specific "acts of racketeering activity," which, taken together, do *not* demonstrate that necessary "pattern."

We believe it possible to make clear why this is so without trying to find, or to explain, some alternative *verbal* formulation for the word "pattern," a task that courts have found difficult to carry out. *See, e.g., H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. at 2901 ("difficult to formulate in the abstract any general test" for the continuity required for a pattern); *id.* at 252, 109

S.Ct. at 2907 (Scalia, J., concurring in the judgment) (Court's formulation of " 'continuity plus relationship'.... seems to me about as helpful ... as 'life is a fountain' "). After all, there are many words best defined by, say, pointing to examples (consider the color "red") or simply by using them in different relevant contexts. And, it sometimes helps more to say what lies beyond a word's conceptual scope than to provide an alternative verbal formulation of what lies within. *Cf. Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) ("the test is commonsensical, not formulaic").

■ We can begin with the Supreme Court's statement that, to prove a "pattern of racketeering activity," one must show separate predicate acts that 1) are "related," and 2) "amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900. We can be reasonably certain that this definition does *not* encompass a single criminal event, a single criminal episode, a single "crime" (in the ordinary, nontechnical sense of that word). (We deliberately employ a vague term like "episode," for we do not want to use a word such as "scheme," which might have a technical meaning. *Cf. id.* at 234–37 & n. 2, 109 S.Ct. at 2898 & n. 2.) For example, a single (interstate) bank robbery, *see* 18 U.S.C. § 1951, consists of several different parts (say, using a gun, threatening a teller, stealing a getaway car, perhaps abducting the teller as well, and eventually lying about participation). Some of those separate parts may themselves constitute separate criminal acts or "crimes" (in the technical sense that each, separately, violates a specific statute). Yet, those several separate criminal parts, taken together, do not generally make out a "pattern." To hold otherwise would mean that many individual bank robberies, frauds, drug sales, embezzlements, and other crimes as well would automatically fall within the scope of the RICO statute, a result contrary to RICO's basic purpose. *See H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900 ("A pattern is not formed by 'sporadic activity.' ") (quoting S.Rep. No. 617, 91st

Cong., 1st Sess. 158 (1969)). One might express the fact that a single criminal episode, or event, is not a "pattern" by stating that its parts, taken together, do not "amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900. Or, one might risk circularity and simply state that those parts do not bear to each other the *relevant* ("pattern of racketeering") relationship. *See id.* (racketeering predicates must be "related"). But, however courts express the point, they have consistently held that a single episode does not constitute a "pattern," even if that single episode involves behavior that amounts to several crimes (for example, several unlawful mailings). *See, e.g., Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 31 (1st Cir.1987) (single bribe paid in three installments, each constituting a mail fraud violation, did not make out "pattern"); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 820–21 (7th Cir.1991); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1417–19 (3d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

Moving now to the opposite extreme, we can also be reasonably certain that, to show a "pattern," one must do more than simply show several different but totally "separate" instances of criminal conduct taking place over time. One 1982 securities fraud and one 1987 drug importation, for example, presumably constitute two separate instances of "racketeering activity." *See* 18 U.S.C. § 1961(1) (including these among acts constituting "racketeering activity"). But, if the two separate securities fraud and drug episodes take place several years apart and involve different victims, methods, purposes, and (almost all) participants, they may well lack the requisite "racketeering" relationship to each other. Thus, they would not constitute a "pattern of racketeering activity." *See H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901; *Menasco*, 886 F.2d at 684.

We can imagine some cases in which it is difficult to say whether several instances of criminal conduct are but parts of a single criminal instance or episode, or constitute several episodes making up a "pat-

tern" (say, several minor frauds designed to raise money in order to finance an effort to rob Fort Knox). *Cf., e.g., id.* And, we can imagine other cases in which it is difficult to decide whether several, quite separate, instances of criminal conduct bear the requisite "racketeering relationship" one to the other (say, multiple instances of fraud over a long time). *See, e.g., Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 45 (1st Cir.1991); *Vild v. Visconsi*, 956 F.2d 560, 566–67 (6th Cir.1992). But neither difficulty arises here. The present case, with one exception, involves several instances of criminal behavior—a bribe, several false statements, a cover-up, and (possibly unlawful) access to confidential information. But, these events all took place over a comparatively short period of time. *See H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct."); *J.D. Marshall*, 935 F.2d at 820 (thirteen months a "relatively short period of time"). And, taken together, they comprise a single effort to obtain (and to keep) one $96 million Defense Department contract. Thus, they seem like the single, complex interstate bank robbery, *see* pages 722–23, *supra,* and are appropriately characterized as separate parts of a single criminal episode. They do not seem like a string of interstate robberies or frauds, separate criminal episodes so related as to threaten further, "continued," racketeering activities. *See H.J. Inc.*, 492 U.S. at 242–43, 109 S.Ct. at 2902.

We note that the courts have not found "patterns" despite circumstances more elaborate, complex, and longer lasting, than those alleged here. *See, e.g., Feinstein*, 942 F.2d at 44–47 (acts of mail and wire fraud related to two real estate transactions, two years and hundreds of miles apart and each involving some different defendants, not part of common scheme); *Vild*, 956 F.2d at 565–70 (allegations against real estate promoters of extortion and mail and wire fraud directed towards

plaintiff and of mail and wire fraud towards third parties not sufficient); *J.D. Marshall*, 935 F.2d at 820–21 (allegations of mail and wire fraud over thirteen months in connection with sale of company's assets). Where the courts have found "patterns," the underlying activity is far more easily characterized as involving multiple criminal episodes, extending over more time, than that before us. *See, e.g., H.J. Inc.*, 492 U.S. at 250, 109 S.Ct. at 2906 (mail and wire fraud scheme over six year period to bribe public utility commissioners to approve unfair and unreasonable rates); *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 447 (1st Cir.1990) (scheme of mail and wire fraud using two jewelry manufacturing companies to defraud plaintiff of $7.5 million in loans over seven years); *Combs v. Bakker*, 886 F.2d 673, 677–78 (4th Cir.1989) ("multiple predicate acts of fraudulent misrepresentations by use of interstate wire and mail facilities, obviously 'related' by design, and 'continuous' enough to have claimed upwards of 55,000 individual victims in necessarily independent transactions").

The one alleged fact that amounts to a conceivable exception to what we have just said consists of the fraudulent conveyance. That conveyance was not part of the conduct aimed at securing the contract, and, according to the complaint, it took place several years later. If we assume that this activity falls within the scope of a RICO predicate criminal statute, *see* 18 U.S.C. § 1961(1), we nonetheless find the conduct too *un*related—*too* separate, *too* distinct, *too* obviously related to a simple effort to avoid a later court judgment—to permit a finding that, taken together with the earlier acts, it is part of a racketeering "pattern." The relation here seems like that between the 1982 securities fraud and the 1987 drug importation. *See* page 723, *supra.* "A pattern is not formed by 'sporadic activity.'" *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900 (quoting S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969)). *See Feinstein*, 942 F.2d at 45.

In sum, we conclude that the complaint does not allege the two or more separate acts that bear a relationship, each to the others, either "amount[ing] to," or "pos[ing] a threat of," the kind of "continued" criminal activity at which the RICO statute was aimed. *See H.J. Inc.*, 492 U.S. at 239, 242, 109 S.Ct. at 2902.

We add that we have decided this case with the benefit of the legal memoranda that the parties filed on this issue in the district court—memoranda contained in the record before us. In light of the thorough arguments in those memoranda, we have found no need to remand the case, or to ask for further briefing on the issue. *Cf. Triad Assoc., Inc. v. Chicago Housing Authority*, 892 F.2d 583, 594 (7th Cir.1989) (affirming dismissal of RICO complaint due to failure to show pattern of racketeering activity, even though issue not reached by district court), *cert. denied*, —— U.S. ——, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990).

The judgment of the district court is

*Affirmed.*