USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1076 APPAREL ART INTERNATIONAL, INC., Plaintiff, Appellant, v. AMERTEX ENTERPRISES LTD., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. P rez-Gim nez, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Lagueux,* District Judge. ______________ ____________________ Freddie P rez-Gonz lez with whom Woods, Rosenbaum, Luckeroth ______________________ ___________________________ & P rez-Gonz lez was on brief for appellant. ________________ Eugene F. Hestres with whom Bird, Bird & Hestres was on __________________ _____________________ brief for appellees. ____________________ February 17, 1995 ____________________  ____________________ * Of the District of Rhode Island, sitting by designation. LAGUEUX, District Judge. This matter is before the ______________ Court on appeal from a decision rendered by Judge Juan M. P rez- Gim nez in the United States District Court for the District of Puerto Rico. Applying Puerto Rico's res judicata doctrine, Judge P rez-Gim nez dismissed appellant Apparel Art International, Inc.'s ("Apparel") claims of fraudulent conveyance, depletion of corporate assets, and alter ego as contained in Apparel's Supplementary Pleadings in Aid of Execution of Judgment. Those pleadings were filed in supplementary proceedings in which Apparel sought to enforce an arbitration award rendered against Amertex Enterprises Ltd. ("Amertex") by American Arbitration Association ("AAA") arbitrators and confirmed by the district court. I. BACKGROUND FACTS I. BACKGROUND FACTS A. The Parties A. The Parties Apparel is a Delaware corporation that manufactures clothing at a plant located in Puerto Rico. Amertex is a New York corporation with offices in Puerto Rico. Leo Jacobson is a resident of Puerto Rico and is president and chairman of the board of directors of Amertex. Harriet Jacobson is a resident of Puerto Rico and is the wife of Leo Jacobson. Leo and Harriet Jacobson are the sole stockholders of Amertex. Co-appellee, D.J. Manufacturing Co. ("D.J."), is a Puerto Rico corporation. Co- appellee, Diego Jacobson, is a resident of Puerto Rico and is the son of Leo and Harriet Jacobson. Diego Jacobson is president of D.J. and chairman of its board of directors. -2- B. The Contractual Relationship Between Apparel and Amertex B. The Contractual Relationship Between Apparel and Amertex In 1985, Apparel entered into a subcontract with Amertex under which Apparel was to manufacture certain components of "Chempro", a camouflage chemical protective suit for military use. Amertex had entered into a contract (the "prime contract") to supply Chempro suits to the United States Department of Defense. This case began when Apparel initiated an arbitration proceeding claiming that Amertex had breached the subcontract. A detailed review of the numerous legal proceedings in this matter, beginning with the arbitration, is a necessary prelude to our determination of the res judicata question at issue on appeal. C. The Arbitration C. The Arbitration On November 17, 1986, Apparel initiated arbitration proceedings against Amertex before the AAA in San Juan, Puerto Rico. The dispute was brought before the AAA pursuant to an arbitration clause contained in the subcontract. As the only signatories to the subcontract, Apparel and Amertex were the only parties to the arbitration. In its Statement of Claims filed with the AAA on July 29, 1987, Apparel alleged that Amertex had engaged in the following misconduct: 1) Amertex breached the subcontract;1 2) Amertex illegally attached Apparel's assets after falsely alleging that Apparel breached the subcontract; 3) Amertex breached certain modifications of the subcontract; 4)  ____________________ 1 Apparel alleged that Amertex breached the subcontract by failing to comply with delivery schedules and pick-ups, failing to file claims or bring about restitution, and failing to make payments. -3- Amertex fraudulently and negligently performed under the subcontract; 5) Amertex failed to pay an increase in the unit price; and 6) Amertex fraudulently induced Apparel to enter into the subcontract. On August 6, 1987, Apparel filed a Supplement to its Statement of Claims alleging that Amertex engaged in fraudulent conduct that constituted a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961-1968 (1988 & Supp. V 1993).2 On September 16, 1987, the arbitrators dismissed Apparel's RICO claims because under the arbitration clause they lacked subject matter jurisdiction to hear those claims. Apparel did not seek judicial review of that dismissal. On June 27, 1989, after nearly two years of hearings, the arbitrators awarded $387,994.00 to Apparel. The arbitrators further decided that the costs of arbitration were to be borne equally between the parties. D. Apparel I - The District Court Action Before Judge P rez-  D. Apparel I - The District Court Action Before Judge P rez- Gim nez Gim nez On September 26, 1989, Apparel filed this lawsuit, Civil Action No. 89-1272 (PG) (hereinafter "Apparel I"), against Amertex and the AAA as co-defendants in the United States District Court for the District of Puerto Rico. The case was assigned to Judge P rez-Gim nez. Apparel's complaint sought to set aside the arbitration award under the procedures authorized  ____________________ 2 Among the conduct that Apparel alleged to violate RICO was: Amertex's fraudulent inducement of Apparel to enter into the subcontract; bribery of government officials in order to secure the prime contract; and mail and wire fraud in the submission of false information to the government. -4- by the Federal Arbitration Act, 9 U.S.C. 10-11 (1988 & Supp. V 1993). Apparel alleged that the arbitration process was arbitrary and the award was insufficient. Apparel prayed that the court set aside the arbitration award and resubmit the merits of the case for resolution by the court. In the alternative, Apparel prayed that the court remand the case to the arbitrators so the award could be clarified. Amertex moved to dismiss the complaint on the grounds that the action was time-barred because Apparel failed to provide required notice. On March 26, 1990, Apparel voluntarily consented to the dismissal, without prejudice, of its claim against the AAA. Apparel also moved to convert the suit against Amertex to an action to enforce the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. 9 (1988). Judge P rez- Gim nez granted Apparel's motion on April 10, 1990, and entered an order dismissing the action as to the AAA, confirming the award against Amertex, and entering judgment for Apparel in the amount of $384,994.00 plus interest, costs, and attorneys' fees. The court subsequently, on the motion of Amertex, modified the judgment to remove the imposition of court costs and attorneys' fees against Amertex. After entering judgment on the arbitration award, the district judge permitted Apparel to conduct post-judgment discovery in supplementary proceedings so that Apparel could execute the judgment against Amertex. In January of 1991, Apparel moved the court to compel production of documents and for -5- sanctions. Apparel alleged that it was investigating the transfer of assets from Amertex to D.J., a company which Apparel suspected to have been created for the purpose of defrauding Amertex's creditors. Amertex opposed the motion on the grounds that Apparel's discovery request was onerous. On January 8, 1991, Apparel moved for execution of the judgment against Amertex because Amertex had not paid the judgment. Apparel requested the court to execute the judgment via attachment or garnishment against a balance owed by D.J. to Amertex. In its opposition to this motion, Amertex argued that D.J. was not a party to the action and Apparel had not filed notice of the motion with D.J., and requested a show cause hearing to determine whether D.J. should be subject to an order to execute the judgment. On January 10, 1991, Amertex also requested that the court issue a protective order insulating Amertex from further discovery requests. On January 24, 1991, the district court denied Amertex's request for a protective order, ordered the execution of the judgment, and ordered attachments and garnishments to be served on Amertex's debtors - including a writ of attachment ordering D.J. to pay to Apparel any sums that D.J. owed to Amertex. In response to Apparel's Motion Requesting an Order for Garnishment of Funds to be served on the United States Government, on January 31, 1991, Amertex filed an "acquiescence" to Apparel's motion for garnishment and requested that the court issue a protective order staying Apparel from filing additional -6- motions for execution of the judgment. In its opposition to Amertex's request for a protective order, Apparel argued that Amertex's claim against the government was uncertain and that the proceeds from that claim had already been assigned by Amertex to the Banco Popular de Puerto Rico. Apparel alleged that Amertex had informed Apparel it was unable to satisfy the judgment because it had no assets. Apparel further alleged that through post-judgment discovery it had discovered evidence of illegal transfers of assets, conspiracy, alter ego, and the misuse of corporate funds by Leo Jacobson and others. On May 8, 1991, Judge P rez-Gim nez denied Amertex's request for a protective order, noting that Amertex had not yet satisfied the money judgment owed to Apparel. E. Apparel II - The District Court Action Before Judge Fust  E. Apparel II - The District Court Action Before Judge Fust While the enforcement proceedings were ongoing before Judge P rez-Gim nez, on May 31, 1990, Apparel initiated a separate civil action in the United States District Court for the District of Puerto Rico. In that case, Civil Action No. 90-1756 (JAF) (hereinafter "Apparel II"), assigned to Judge Jose Antonio Fust , Apparel made several claims under RICO against Amertex, as well as D.J., Leo Jacobson, Harriet Jacobson, Diego Jacobson, and Donald Sherry.3 These were essentially the same allegations that had been dismissed by the arbitrators for lack of subject matter jurisdiction. Apparel alleged that Amertex engaged in bribery of government officials and submitted false information  ____________________ 3 Donald Sherry was a government contracting officer. -7- to the government in its effort to secure the Chempro contract. In addition, Apparel alleged that both during the arbitration hearings and after the award was rendered, Leo Jacobson, conspiring with Diego Jacobson, diverted Amertex's assets to D.J. in order to avoid satisfying the arbitration award. These allegations were made prior to the post-judgment discovery conducted in connection with the enforcement proceeding pending before Judge P rez-Gim nez, but raised new fraudulent conveyance and alter ego claims which were never brought before the arbitrators. On March 4, 1991, Apparel moved to amend its complaint, further elaborating its fraudulent conveyance claims and seeking to add a new defendant, one Ricardo Charaf.4 Apparel alleged that its amended complaint was based on evidence obtained through post-judgment discovery conducted in the enforcement action before Judge P rez-Gim nez. On April 1, 1991, the co-defendants argued in their opposition to Apparel's motion for leave to amend that Apparel's allegations of fraudulent conveyance should be submitted in the enforcement action then pending before Judge P rez-Gim nez, and not in Apparel II. On August 21, 1991, Judge Fust dismissed Apparel's claims as contained in the amended complaint. He held that res judicata precluded litigation of Apparel's RICO claims pertaining to the parties' subcontractual relationship because they could and should have been raised before Judge P rez-Gim nez in Apparel I before final judgment was entered on the arbitration award.  ____________________ 4 Ricardo Charaf was Vice-President of Amertex. -8- Accordingly, he ruled that further litigation concerning the damages suffered by Apparel under the subcontract was barred by res judicata. Although Judge Fust also dismissed Apparel's fraudulent conveyance claims, in so doing he noted that those allegations should be raised in the enforcement action before Judge P rez-Gim nez. Otherwise, multiple judgments might be rendered on the same claims. Accordingly, Judge Fust dismissed Apparel's fraudulent conveyance claims "without prejudice to any legitimate execution of judgment motions which plaintiff may seek to file before Judge P rez-Gim nez." Apparel Art Int'l, Inc. v. _______________________ Jacobson, Civil No. 90-1756 (JAF) at 7 (D.P.R. Aug. 21, 1991). ________ Pursuant to this order, a copy of the dismissal order was filed in the enforcement proceeding then pending before Judge P rez- Gim nez. Apparel then appealed Judge Fust 's dismissal to this Court. A panel of this Court affirmed Judge Fust 's dismissal of the action, but did not base its decision on res judicata principles. Apparel Art Int'l, Inc. v. Jacobson, 967 F.2d 720, ________________________ ________ 722 (1st Cir. 1992). Rather, it was held that Apparel's allegations failed to establish a pattern of illegal conduct sufficient to support a claim under RICO. Id. at 724. ___ F. Apparel's Supplementary Pleadings in Aid of Execution of  F. Apparel's Supplementary Pleadings in Aid of Execution of Judgment Judgment On October 29, 1992, Apparel filed a Motion to Supplement Allegations as Part of Supplementary Proceedings before Judge P rez-Gim nez. In its motion, Apparel alleged that while conducting post-judgment discovery, Apparel learned that -9- Amertex had concealed and diverted its assets in concert with co- appellee D.J. and had thus impeded execution of the judgment. Therefore, Apparel initiated post-judgment supplementary proceedings in an effort to satisfy the judgment. Accordingly, also on October 29, Apparel filed Supplementary Pleadings in Aid of Execution of Judgment. The supplementary pleadings named Amertex, D.J., Leo Jacobson, Harriet Jacobson, and Diego Jacobson as co-defendants involved in Amertex's effort to avoid paying the judgment. Apparel alleged the following unlawful conduct: 1) Amertex's corporate assets had been depleted; 2) Amertex's assets were fraudulently conveyed to co-appellee D.J.; and 3) Amertex and D.J. were alter egos of their presidents, Leo Jacobson and Diego Jacobson, respectively.5 Apparel sought only two remedies. First, Apparel sought to execute the judgment against the assets that were fraudulently conveyed from Amertex to D.J. Second, Apparel prayed that on its depletion of corporate assets and alter ego claims, all co-defendants be held jointly and severally liable for the judgment. The co-defendants did not oppose Apparel's attempt to file a supplementary pleading, and on November 11, 1992, the district court granted Apparel's motion to supplement its allegations as part of the supplementary proceeding in aid of execution of judgment. On January 29, 1993, the district court ordered D.J. to appear at a show cause hearing  ____________________ 5 These are substantially the same allegations as those made before Judge Fust in Apparel II and dismissed by the court without prejudice to the consideration of them in the enforcement action before Judge P rez-Gim nez. -10- and demonstrate why the asset transfers from Amertex were not illegal and should not be rendered null and void so that Apparel could execute the judgment directly against the transferred assets. The order also directed Apparel to offer proof of its alter ego allegations sufficient to show that liability could be imposed against the co-defendants. On April 12, 1993, co-appellees D.J. and Diego Jacobson filed a Motion to Dismiss, or in the Alternative for Summary Judgment on the grounds that, due to Judge Fust 's order dismissing Apparel's claims in Apparel II, res judicata barred litigation of Apparel's claims in the supplementary proceedings. D.J. and Diego Jacobson further argued that the supplementary pleadings were procedurally defective under Fed. R. Civ. P. 69. The motion was opposed by Apparel. On August 3, 1993, Judge P rez-Gim nez granted the motion to dismiss after concluding that Apparel's claims were precluded under Puerto Rico's res judicata doctrine. He reasoned that the underlying purpose of Apparel's claims in the supplementary proceedings was to raise claims of fraudulent conduct that had been previously dismissed by Judge Fust in Apparel II and affirmed by this Court. Judge P rez- Gim nez reasoned that there was no difference between the persons or claims in the enforcement action and those in Apparel II, and, thus, concluded that Apparel had merely reworked its legal theories in an effort to secure a more favorable judgment. On August 13, 1993, Apparel moved the court to amend and reconsider its order of dismissal. Judge P rez-Gim nez -11- denied the motion on October 12, 1993, and judgment was entered on November 30, 1993. Apparel appealed the district court's dismissal to this Court on December 17, 1993. After carefully considering the record, the parties' briefs, and the parties' oral arguments, this Court holds that res judicata does not bar Apparel's claims as contained in the supplementary pleadings. Therefore, we reverse the dismissal entered by the court below and remand the case for further proceedings. II. DISCUSSION II. DISCUSSION The decision appealed from is that res judicata barred relitigation of the claims as contained in Apparel's Supplementary Pleadings in Aid of Execution of Judgment. Judge P rez-Gim nez reasoned that, under Puerto Rico's version of the res judicata doctrine, there was no difference between the claims raised in Apparel's supplementary pleadings and those dismissed by Judge Fust in Apparel II - a dismissal that was affirmed by this Court of Appeals. We review de novo the district court's _______ dismissal of Apparel's claims as contained in the supplementary pleadings. See Kale v. Combined Ins. Co. of America, 924 F.2d ___ ____ _____________________________ 1161, 1165 (1st Cir. 1991), cert. denied, 112 S. Ct. 69 (1991) ____________ (Court of Appeals ordinarily reviews trial courts' rulings on motions to dismiss de novo). _______ Apparel's supplementary pleadings were brought in supplementary proceedings pursuant to Fed. R. Civ. P. 69(a) to aid in the execution of the district court's judgment in Apparel -12- I. Through that judgment, the court confirmed the award of the AAA arbitrators. At the outset we must consider whether federal res judicata principles are applicable to this case or whether, as the district court concluded, Puerto Rico's res judicata principles should guide the analysis. Under Fed. R. Civ. P. 69(a), supplementary proceedings in aid of execution of a judgment are to be conducted "in accordance with the practice and procedure of the state in which the district court is held . . . ." However, a district court must apply only those provisions of state law which specifically govern the enforcement of judgments. 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure 3012 (1973). _______________________________ The district court need not follow general state procedural law. Id. Therefore, because Puerto Rico's res judicata doctrine is ___ not uniquely applicable to supplementary proceedings, Fed. R. Civ. P. 69(a) does not compel the application of Puerto Rico's principles of res judicata in this case.6 Plainly, the district court was mistaken when it applied Puerto Rico's preclusion law in dismissing Apparel's supplementary pleadings. Federal law principles of res judicata govern the preclusive effect of a prior federal court's judgment on a subsequent action brought in federal court. In re El San _____________  ____________________ 6 Puerto Rico's res judicata doctrine is codified in P.R. Laws Ann. tit. 31, 3343 (1991). This is a general provision of Puerto Rico's law of civil procedure which is not specifically applicable to supplementary proceedings in aid of execution of a judgment. -13- Juan Hotel Corp., 841 F.2d 6, 9 (1st Cir. 1988).7 In this case, ________________ the Court must analyze the preclusive effects of the prior judgments rendered by the district court in Apparel I and Apparel II to determine whether they bar litigation of Apparel's supplementary pleadings. Because both of these earlier judgments were rendered by a federal court, the preclusive effect of those judgments in this federal case is governed by federal res judicata principles.8 Accordingly, federal principles of res judicata, not those of the Commonwealth of Puerto Rico, are controlling here with respect to this Court's de novo review of _______ the district court's dismissal of Apparel's supplementary pleadings. Under the federal law of res judicata,9 a final  ____________________ 7 This Court has held that where a federal court has subject matter jurisdiction under diversity, federal law governs the preclusive effect of prior federal court judgments. Johnson v. _______ SCA Disposal Servs., Inc., 931 F.2d 970, 974 (1st Cir. 1991). __________________________ Similarly, federal law governs the res judicata effects of a federal court judgment in a prior federal question case on a subsequent case that presents a federal question to a federal court. See Blonder-Tongue Lab., Inc. v. University of Ill. ___ __________________________ ___________________ Found., 402 U.S. 313, 324 n.12 (1971); Gonz lez v. Banco Cent. ______ ________ ___________ Corp., 27 F.3d 751, 755 (1st Cir. 1994). The policy underlying _____ the application of federal res judicata principles is that the federal courts must have the power to define the effect of their own judgments. See Johnson, 931 F.2d at 974 (quoting Kern v. ___ _______ ____ Hettinger, 303 F.2d 333, 340 (2d Cir. 1962)). _________ 8 Although the district court's judgment in Apparel I simply confirmed the award rendered by the AAA arbitrators, under the Federal Arbitration Act such a judgment has the same effect as a judgment in an action. 9 U.S.C. 13 (1988). Therefore, it is, in all respects, a federal court judgment. 9 Res judicata is sometimes referred to as claim preclusion. The doctrine of collateral estoppel, or issue preclusion, is related but distinct. Under collateral estoppel, once a court has actually decided an issue of fact or law necessary to its -14- judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action. Allen v. McCurry, 449 U.S. 90, _____ _______ 94 (1980); Gonz lez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st ________ _________________ Cir. 1994). The policy rationale behind res judicata is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen, 449 U.S. _____ at 94. Res judicata, therefore, prevents plaintiffs from splitting their claims by providing a strong incentive for them to plead all factually related allegations and attendant legal theories for recovery the first time they bring suit. See Kale, ___ ____ 924 F.2d at 1166. This Court has articulated a three-part test to determine whether res judicata precludes litigation of a party's claims. For a claim to be precluded, the following elements must be present: 1) a final judgment on the merits in an earlier suit; 2) sufficient identicality between the causes of action asserted in the earlier and later suits; and 3) sufficient identicality between the parties in the two suits. Gonz lez, 27 ________ F.3d at 755; Kale, 924 F.2d at 1165. In this case, the Court ____  ____________________ judgment, that decision may preclude relitigation of that factual or legal issue in a suit on a different cause of action involving a party to the first action. Allen v. McCurry, 449 U.S. 90, 94 _____ _______ (1980). Although Apparel's allegations of fraudulent conveyance were raised in Apparel II and dismissed by the district court, neither factual determinations nor conclusions as to the legal merit of these claims were made by the trial court. Accordingly, collateral estoppel is inapplicable in this case. Only the application of res judicata is at issue. -15- need not entertain detailed analysis of the first and third elements of this test. Our examination of the second element of the test clearly establishes that res judicata is inapplicable to Apparel's claims. Only where two separate suits involve sufficiently identical causes of action does a judgment in an earlier action preclude litigation of claims in a subsequent action. See ___ Gonz lez, 27 F.3d at 755; Kale, 924 F.2d at 1165. The focal ________ ____ inquiry in assessing the applicability of res judicata, therefore, is whether the causes of action raised in separate lawsuits are indeed the same. This Court has adopted the methodology of the Restatement (Second) of Judgments in defining the cause of action for res judicata purposes. Manego v. Orleans ______ _______ Bd. of Trade, 773 F.2d 1, 5 (1st Cir. 1985), cert. denied, 475 _____________ ____________ U.S. 1084 (1986). Accordingly, we follow a transactional approach to determine the identity of the underlying claims or causes of action. See Gonz lez, 27 F.3d at 755; Kale, 924 F.2d ___ ________ ____ at 1166; Manego, 773 F.2d at 5. Under this approach, a cause of ______ action is defined as a set of facts which can be characterized as a single transaction or a series of related transactions. The cause of action, therefore, is a transaction that is identified by a common nucleus of operative facts. Although a set of facts may give rise to multiple counts based on different legal theories, if the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action. See, e.g., Gonz lez, 27 ___ ____ ________ -16- F.3d at 755; Kale, 924 F.2d at 1166. This Court must determine, ____ therefore, whether the facts that underlie Apparel's claims as contained in its supplementary pleadings arise from the same nucleus of operative facts as those that were adjudicated by the prior judgments of the district court.10 Only if the actions' factual bases are the same will Apparel's claims be barred by res judicata. If Apparel's claims as advanced in the supplementary proceedings are separate and distinct from those litigated in Apparel I and Apparel II, that is, if they rest on a different factual basis, then res judicata does not preclude litigation of Apparel's claims. See Landrigan v. City of Warwick, 628 F.2d ___ _________ ________________ 736, 741 (1st Cir. 1980). This Court has enumerated several factors which are useful in determining whether a party has advanced claims in multiple litigations which derive from the same nucleus of operative facts. See Gonz lez, 27 F.3d at 756. These factors ___ ________ include: 1) whether the facts are related in time, space, origin or motivation; 2) whether the facts form a convenient trial unit; and 3) whether treating the facts as a unit conforms to the parties' expectations. Id. Additionally, when defining the ___ contours of the common nucleus of operative facts, it is often  ____________________ 10 Although Apparel's claims were raised in supplementary proceedings and not in a separate action, the policy rationale underlying the doctrine of res judicata makes it applicable to a supplementary proceeding just as it would to a separate action. See Mitchell v. Commission on Adult Entertainment Estabs., 12 ___ ________ ___________________________________________ F.3d 406, 409 (3d Cir. 1993). It is clear that a party could not relitigate claims through supplementary proceedings that were previously litigated to a judgment in an earlier action. -17- helpful to consider the nature of the injury for which the litigant seeks to recover. See id. With these considerations in ___ ___ mind, this Court now examines Apparel's claims in the supplementary pleadings, Apparel I, and Apparel II to determine whether they are rooted in the same nucleus of operative facts. We begin by analyzing Apparel's claims as contained in its supplementary pleadings. These claims were brought in a post-judgment supplementary proceeding in which Apparel sought to satisfy the judgment rendered in its favor by the district court in Apparel I. Apparel's supplementary pleadings allege numerous instances in which Amertex, in conjunction with the other co- defendants, acted to defraud Amertex's creditors, including Apparel. We need not recite each and every alleged wrongdoing. It suffices to identify the three general allegations made by Apparel: 1) that Amertex depleted its corporate assets; 2) that Amertex made fraudulent conveyances; and 3) that Amertex and D.J. are alter egos of their respective presidents, Leo and Diego Jacobson. The remedies that Apparel seeks further illustrate the factual bases of its claims. For the alleged fraudulent conveyances, Apparel seeks to execute the judgment in Apparel I directly against those assets that were transferred to D.J. With respect to the depletion of corporate assets and alter ego allegations, Apparel seeks to make all the co-defendants jointly and severally liable on the judgment. It is obvious on the face of the supplementary pleadings that Apparel's cause of action in the supplementary proceedings is the alleged effort by Amertex -18- and the other co-defendants, including co-appellees, to defraud Apparel through measures taken to prevent Apparel from collecting on its judgment. Apparel's supplementary pleadings seek only to satisfy the judgment. They do not raise any new legal theories on which Apparel seeks to recover additional damages. Apparel's supplementary pleadings can only be precluded by res judicata if the same cause of action, i.e. the co-defendants' fraudulent efforts to avoid execution of the judgment against Amertex, was previously litigated to a judgment on the merits in either Apparel I or Apparel II. Upon analysis of the causes of action litigated in Apparel I and Apparel II, it is clear that the cause of action raised in Apparel's supplementary pleading has never before been litigated on the merits and simply represents Apparel's effort to enforce the judgment already entered by the district court in Apparel I. In Apparel I, the district court confirmed the award rendered by the AAA arbitrators and entered judgment for Apparel in the amount of $387,994.00. An arbitration award generally has res judicata effect as to all claims heard by the arbitrators. See Pujol v. Shearson/American Express, Inc., 829 F.2d 1201, ___ _____ ________________________________ 1206-07 (1st Cir. 1987); 18 Charles A. Wright et al., Federal _______ Practice and Procedure 4475 (1981). A judgment by a federal ______________________ court confirming an arbitration award under the Federal Arbitration Act has "the same force and effect, in all respects, as, and [is] subject to all the provisions of law relating to, a judgment in an action . . . ." 9 U.S.C 13 (1988). Therefore, -19- when a federal district court enters a judgment confirming an arbitration award pursuant to the Federal Arbitration Act, that judgment has res judicata effect as to all matters adjudicated by the arbitrators and embodied in their award. See 6 C.J.S. ___ Arbitration 148 (1975). Accordingly, to assess whether the ___________ district court's judgment in Apparel I precludes litigation of Apparel's supplementary pleadings, this Court must determine whether Apparel's claims in arbitration arose from the same nucleus of operative facts as those raised by its allegations in the supplementary pleadings. The claims that Apparel raised before the AAA arbitrators arose from a common nucleus of operative facts relating to Amertex's misconduct while entering into and performing under the subcontract.11 This was Apparel's cause of action and it formed the basis for the claims adjudicated by the arbitrators and the district court's judgment confirming the arbitrators' award. For the purposes of our res judicata analysis, this cause of action is clearly distinct from that raised by Apparel's supplementary pleadings. None of the factual circumstances giving rise to Apparel's claims of depletion of corporate assets, fraudulent conveyance, or alter ego was ever raised before the arbitrators. Therefore, the district court's judgment in Apparel I does not, under res judicata principles, preclude litigation of Apparel's claims as contained in the supplementary pleadings.  ____________________ 11 See supra pp. 2-3. ___ _____ -20- Finally, the Court must consider whether the judgment rendered by Judge Fust in Apparel II precludes the litigation of Apparel's supplementary pleadings. Apparel's claims as contained in its Amended Complaint were based on two separate sets of facts and thus raised two separate causes of action. The first set of facts gave rise to Apparel's claim that Amertex violated RICO and included allegations that Amertex bribed government officials while securing the prime contract and also committed mail and wire fraud both in inducing Apparel to enter into the subcontract and through Amertex's subsequent breaches of the subcontract. These claims closely parallel the RICO claims raised by Apparel in arbitration and dismissed by the AAA arbitrators for lack of subject matter jurisdiction. As in Apparel I, the cause of action defined by this common nucleus of operative facts is clearly distinct from that raised by Apparel in its supplementary pleadings.12 It does not pertain to the actions taken by Amertex and the other co-defendants to obstruct Apparel's efforts to collect on the judgment. The second set of facts alleged by Apparel in Apparel II formed the basis for essentially the same claims of fraudulent conveyance, depletion of assets, and alter ego that Apparel  ____________________ 12 This Court noted the distinction between the two sets of facts in another context in the decision in Jacobson, where it ________ was observed that the fraudulent conveyance "was not part of the conduct aimed at securing the contract . . . the [fraudulent conveyance was] too unrelated -- too separate, too distinct, too __ ___ ___ ___ obviously related to a simple effort to avoid a later court judgment -- to permit a finding that, taken together with the earlier acts, it is part of a racketeering 'pattern.'" 967 F.2d at 724. -21- raised in its supplementary pleadings. In Apparel II, Apparel alleged that while the arbitration was pending, Amertex, along with co-appellees and the other co-defendants, engaged in transactions intended to defraud Amertex's creditors, including Apparel. Accordingly, Apparel's Amended Complaint in Apparel II prayed that Leo and Harriet Jacobson, along with Diego Jacobson and D.J., be held jointly and severally liable to Apparel for the amount of the judgment on the arbitration award, plus interest. Although Apparel's Amended Complaint in Apparel II includes claims based on the same cause of action as that raised in the supplementary pleadings, Judge Fust 's dismissal of the complaint in Apparel II does not preclude litigation of these claims in the supplementary proceedings. Under a generally accepted exception to the res judicata doctrine, a litigant's claims are not precluded if the court in an earlier action expressly reserves the litigant's right to bring those claims in a later action. Kale, 924 F.2d at 1167; Restatement (Second) of ____ Judgments 26(1)(b) (1982). In Judge Fust 's opinion dismissing Apparel's Amended Complaint in Apparel II, he noted that: Essentially, the fraudulent transfer claim is merely one aspect of plaintiff's attempt at collection of the judgment issued [in Apparel I]. Since plaintiff has already begun that process in the case before Judge P rez-Gim nez, we cannot entertain these claims again here without a real risk of allowing multiple judgments to issue for the same harm . . . . The dismissal is without prejudice to any legitimate execution of judgment motions which plaintiff may seek to file before Judge P rez-Gim nez [in the supplementary proceedings]. -22- Apparel Art Int'l v. Jacobson, Civil No. 90-1756 (JAF) at 6-7 _________________ ________ (D.P.R. Aug. 21, 1991). It is clear, therefore, that Judge Fust intended to preserve Apparel's right to raise its fraudulent conveyance claims in the supplementary proceedings before Judge P rez- Gim nez. Accordingly, Judge Fust 's dismissal of Apparel's claims in Apparel II does not preclude litigation of Apparel's supplementary pleadings. III. CONCLUSION III. CONCLUSION We reverse the district court's dismissal of Apparel's claims as contained in the Supplementary Pleadings in Aid of Execution of Judgment. The cause of action alleged by Apparel in its supplementary pleadings has never before been litigated on the merits, and therefore res judicata does not preclude its litigation in supplementary proceedings. Apparel may well be dissatisfied with the award it received in arbitration, as co- appellees contend, but in this case Apparel merely seeks to enforce the judgment rendered in its behalf by the district court in Apparel I. Accordingly, Apparel may prosecute its claims for depletion of corporate assets, fraudulent conveyance, and alter ego either in the supplementary proceeding or in a separate lawsuit. We decline to address co-appellee's arguments regarding the procedural inadequacy of appellant's supplementary pleadings under Fed. R. Civ. P. 69(a) since that was not the basis for the dismissal. All that we hold is that it was error to dismiss the -23- supplementary pleadings in the supplementary proceedings on res judicata grounds. We remand this case to the district court for further proceedings consistent with this decision. Reversed and Remanded. Costs to appellant. _____________________ -24-