**Dr. Alain J. VIZIER Plaintiff**

v.

**THE UNIVERSITY OF PUERTO RICO Norman Maldonado, UPR President Dr. Fred Soltero–Harrington Chancellor of UPR–Mayaguez Dr. Ismael Scott, Dean of Arts and Sciences Dr. Carlos Casablanca, Director of Humanities Dept. in UPR–Mayaguez Prof. Anthony Izquierdo, President and Member of the Personnel Committee Defendants**

**No. CIV. 00–1848CCC.**

United States District Court, D. Puerto Rico.

June 24, 2004.

Alfredo Acevedo–Cruz, San Juan, PR, Carlos J. Suárez–Maldonado, for Plaintiff.

Carlos E. Bayron–Vélez, Mayaguez, PR, Julie A. Suderlund–Vilanova, Salvador J. Antonetti–Stutts, for Defendants.

## OPINION AND ORDER

CEREZO, District Judge.

On December 23, 2003, the Court of Appeals for the First Circuit vacated the judgment entered on June 13, 2002 which dismissed this action in its entirety for lack of prosecution. In remanding the case for further proceedings, the Court observed:

> On remand, other factors may counsel against the district court proceeding to a full consideration of the merits of the summary judgment motion at once. While this appeal was pending, the appellees notified this court that plaintiff/appellant Vizier had filed an action in the local courts of Puerto Rico, and had asserted claims in that action arising out of the same nucleus of facts and against essentially the same defendants as in this federal action. Vizier has conceded this fact, and he has confirmed that the lower court of Puerto Rico dismissed his suit on the merits; that the appellate circuit court affirmed that decision; and that the Puerto Rico Supreme Court has denied his petition for a writ of certiorari. A motion for reconsideration is pending before the Puerto Rico Supreme Court.
>
> Once the proceedings in the Puerto Rico Supreme Court are concluded, this federal action may be barred under principles of claim preclusion and/or issue preclusion, *see Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), *Cruz v. Melecio*, 204 F.3d 14, 19–20 (1st Cir.2000), but we think it best to leave that question to the district court in the first instance. Until the Puerto Rico proceedings are concluded, considerations of comity might favor the federal courts staying their hands while the matter is proceeding in the Puerto Rico courts, *see Currie v. Group Ins. Comm'n*, 290 F.3d 1 (1st Cir.2002); but again, we think that is a question better

left to the district court in the first instance.

*See* Corrected Judgment of the Court of Appeals (docket entry 101).

The Court addressed the concerns of the Court of Appeals by issuing its Order dated February 13, 2004 (*see* docket entry 104), which required the parties to file simultaneous memoranda on the issue of whether this action was barred under the principles of claim preclusion and/or issue preclusion. Plaintiff complied on March 18, 2004 (docket entry 105), claiming, *inter alia,* that this action "is not precluded by the final state court judgment which dismissed his contingent damages claim against a state entity on the basis of an unreviewed state administrative finding," that "preclusion is not appropriate where [he] did not have a 'full and fair opportunity' to litigate his federal constitutional claims against the named defendants in the prior proceedings," that "claim preclusion is not triggered where the state action and the federal action were brought against different parties," and that "issue preclusion is not triggered where the state action and the federal action raise different issues material to the claims asserted."[1] While defendants never complied with that Order, they had previously filed a Motion Submitting Final Decision by Supreme Court of Puerto Rico (docket entry 102). Exhibit 2 to that Motion is a resolution issued by the Supreme Court of Puerto Rico on October 17, 2003 denying the motion for reconsideration filed by Mr. Vizier of that Court's prior denial of his writ of certiorari.

On May 7, 2004, an Order was issued requiring plaintiff to submit the following documents, to be translated into the English-language within fifteen days thereafter: (1) the complaint and any amended complaints and decision filed in his case at the Superior Court of Mayaguez in case DP 1999–0082, (2) all decisions and sentence issued by the Circuit Court of Appeals in Civil Number IDP 19990082 KLAN0300156, (3) all decisions and/or sentence issued by the Circuit Court of Appeals in Civil Number JS00–02 KLRA0200269, and (4) petitions, sentence and resolution in the Supreme Court case CC–2993–509. The documents were submitted on May 17, 2004 (docket entry 108), and their English translations were filed on June 10, 2004 (docket entry 110).

The Court has reviewed these documents, which reflect that at the time that Mr. Vizier filed his complaint before the Superior Court of Mayagüez on March 2, 1999, he had filed an appeal before the President of the University of Puerto Rico (UPR) on February 15, 1999. Accordingly, when the case came for hearing before the Superior Court on a request for injunctive relief, the parties stipulated that the judicial proceeding before that court be stayed until after the administrative hearing was held on April 12, 1999.[2]

Our perusal of the allegations of the complaint filed by Mr. Vizier before the Mayagüez Superior Court reflects that he raised violations to his First Amendment rights (allegation 4 of the complaint) and to the Due Process Clause of the Constitution of the United States and the Commonwealth (allegations 7–10 & 13). On January 7, 2003, the Superior Court of Mayagüez entered judgment dismissing the complaint, with prejudice. By then,

1. The Court notes that in his memorandum plaintiff Vizier makes reference to allegations of political discrimination, which, however, are not part of the factual allegations contained in the Second Amended Complaint.

2. See pages 2–3 of the Judgment issued by the Circuit Court of Appeals of the Commonwealth of Puerto Rico.

the separate administrative proceeding had ended since the Board of Trustees of the UPR issued an adverse decision against Mr. Vizier. He sought its review before the Circuit Court of Appeals, Regional Circuit 4, Case No. JS00–02, and said court dismissed it for lack of jurisdiction as petitioner failed to notify the agency, the Board of Trustees, within the thirty days established by law. Mr. Vizier failed to seek reconsideration from this resolution or further relief from the Supreme Court of the Commonwealth. Thereby, the adverse administrative decision of the Board of Trustees became firm and final.

In dismissing Vizier's complaint, the Mayagüez Superior Court found that no constitutional norm had been violated since the final administrative finding was that the motivations for the discharge were valid. Plaintiff Vizier appealed the trial court's judgment to the Circuit Court of Appeals, Regional Circuit 4. That Court issued its judgment in Civil No. IDP1999–0082 on May 27, 2003, affirming the judgment of dismissal. At page 2 of that judgment, the appellate court acknowledges that the Vizier complaint alleged that the proceeding leading to his discharge was unconstitutional, at page 4 it makes reference to Mr. Vizier's separate petition for review of the Board of Trustees' decision in which he raised a due process claim, and at page 6 it addresses his claim on appeal that the trial court erred in failing to acknowledge the violation of constitutional rights. The Court specifically mentions appellant's claim that the court of first instance "had jurisdiction and should have adjudicated his claims regarding the violation of constitutional rights, regardless [of] the adverse result which had been reached in the administrative procedure." *See* page 6 of Judgment; *see also* Certified Translation, docket entry 110, Exhibit C, at p. 8. At pages 12–13, the appellate court

concluded that all claims of due process violations were duly considered and adjudicated by the Board of Trustees, that its detailed finding on the legality of the administrative process which led to his discharge became final and firm, and that the circumstances underlying such claim before the administrative forum and the judicial forum were similar, differing only as to the remedy sought. At page 14, the appellate opinion addresses Mr. Vizier's First Amendment claim that the conduct which the Board considered as justification for his discharge is behavior protected under his freedom of expression rights. Again, the appellate court relied on the findings of the administrative forum on the matter and deferred to its conclusion.

Mr. Vizier took the final step of the judicial ladder by seeking certiorari from the Supreme Court for the Commonwealth Puerto Rico on June 30, 2003, Case No. CC—03–0509. The only error raised was that the Circuit Court of Appeals erred upon determining that all of the allegations set forth in his complaint, including those of a constitutional nature, were adjudicated by the administrative agency. *See* pages 5–6 of the Writ. At pages 7–10, Vizier tackled the discussion of this error, arguing that the administrative bodies of the UPR lacked jurisdiction to consider constitutional matters, that the Board of Trustees did not adjudicate his due process and First Amendment claims, that the causes of action before the trial court and the administrative agency were different, and that there is no statutory or judicial interpretation which supports the appellate courts' conclusion as to the scope and binding effect of the administrative agency finding upon the determination of the constitutional claim raised in his judicial complaint. On September 16, 2003, the Supreme Court of Puerto Rico entered a resolution denying the writ of certiorari

and on October 17, 2003 it denied Mr. Vizier's motion for reconsideration.[3]

As the Supreme Court explained in *Allen v. McCurry,* 449 U.S. 90, 100–101, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980):

In reviewing the legislative history of § 1983 in *Monroe v. Pape,* [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492], the Court inferred that Congress had intended a federal remedy in three circumstances: where state substantive law was facially unconstitutional, where state procedural law was inadequate to allow full litigation of a constitutional claim, and where state procedural law, though adequate in theory, was inadequate in practice. In short, the federal courts could step in where the state courts were unable or unwilling to protect federal rights. This understanding of § 1983 might well support an exception to res judicata and collateral estoppel where state law did not provide fair procedures for the litigation of constitutional claims, or where a state court failed to even acknowledge the existence of the constitutional principle on which a litigant based his claim. Such an exception, however, would be essentially the same as the important general limit on rules of preclusion that already exists: Collateral estoppel does not apply where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court. But the Court's view of § 1983 in *Monroe* lends no strength to any argument that Congress intended to allow relitigation of federal issues decided after a full and fair hearing in a state court simply because the state court's decision may have been erroneous."

Citations omitted. *See also* 18 Moore's *Federal Practice,* § 131.30(1)(b) (Matthew Bender 3d ed.); *Hudson v. Hedge,* 27 F.3d 274, 276 (7th Cir.), *cert. denied* 513 U.S. 1046, 115 S.Ct. 641, 130 L.Ed.2d 547 (1994) (plaintiff cannot use a new suit to contend that the disposition of the first was mistaken).

■ Even if plaintiff Vizier were correct in his claim that the state judgments are all erroneous, it is insufficient to escape the preclusive effect of those state judgments of the Puerto Rico courts on the claim that he was unlawfully discharged in violation of his First Amendment and Due Process rights. The only exception to this doctrine, failure to fully litigate, does not apply here as the records of the local courts clearly show that Vizier's claims were actually litigated and were the center-stage controversy which the appellate courts, *i.e.* the Circuit Court of Appeals and the Supreme Court of Puerto Rico, reviewed. These judgments, therefore, can only be challenged as erroneous. It cannot be argued that they were not actually litigated and determined by a valid and final judgment, a determination which is conclusive in this subsequent action between essentially the same parties and the same claim.

■ We address now the allegations made in this case that plaintiff was retaliated against because he rejected his employer's unlawful disparate practices against him and other professors, that he was the victim of retaliation because he exercised his freedom of speech and that he was terminated because of discrimination based on his national origin. The allegations of retaliation and national origin discrimination are not separate, distinct claims but rather different theories underlying the claim of unlawful termination of employment, just as the violations of his First Amendment and Due

---

**3.** *See* Exhibit 2 attached to docket entry 107.

Process rights set forth in his complaint. The transactional approach of the Restatement (Second) of Judgments, used to determine whether a claim asserted in a pending action is the same claim which was or could have been asserted in a prior action, has been adopted by the First Circuit in *Apparel Art Intern. v. Amertex Enterprises,* 48 F.3d 576, 583 (1st Cir. 1995). The Court observed:

> Under this approach, a cause of action is defined as a set of facts which can be characterized as a single transaction or a series of related transactions. The cause of action, therefore, is a transaction that is identified by a common nucleus of operative facts. Although a set of facts may give rise to multiple counts based on different legal theories, if the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action.

The Court then discussed factors which are useful in determining whether the claims in the different litigations derive from the same nucleus of operative facts, to wit, (1) whether the facts are related in time, space, origin or motivation, (2) whether the facts for a convenient trial unit, (3) whether treating the facts as a unit conform to the parties expectations, and (4) the nature of the injury.

> Generally, an action must include all legal theories that may give rise to relief based on the same transaction or series of transactions. All such theories comprise a single claim, which cannot be split. The rule which holds that a mere change in legal theory does not constitute a different claim that can be the basis of a separate action applies to rights asserted under different federal statutes, as well as to legal theories based on rights under both common law and statutory law. These rights must usually be asserted in one action or will be lost by the operation of the claim preclusion doctrine.

18 *Moore's Federal Practice* § 131.21[3][b] (Matthew Bender 3d Ed.)

Upon comparing the pleadings in both lawsuits, guided by these factors, the Court concludes that the claim raised before the Mayagüez Superior Court arose, as well as his federal action, form a common nucleus of operative facts relating to Mr. Vizier's alleged unlawful termination as a professor at the UPR Mayagüez campus. The fact that new legal theories have been advanced does not defeat the preclusive effect of the adjudication of his unlawful termination claims by the state court's final judgment.

Nor can it be said that his federal action brings to light new facts which were not previously known by plaintiff. He has alleged in this action that since the spring of 1997 he was aware of mockery because of his national origin. The same holds true for the retaliatory conduct imputed to defendant which he claims existed throughout his tenure.

Having decided that Vizier's claims under the First Amendment and the Due Process Clause, as well as his Title VII claims for retaliation and discrimination based on national origin, and any related supplemental claims brought under the local laws, are barred under the doctrine of claim preclusion, partial judgment shall be entered accordingly. The Court, however, will give separate consideration to the claim of sexual harassment set forth in paragraphs 1, 12 and 13 of his Second Amended Complaint (docket entry 71).

SO ORDERED.

### JUDGMENT

The only remaining claim in this action is the claim for sexual harassment

under Title VII. Defendants, in their answer to the complaint, raised as an affirmative defense that "Plaintiff's charge of discrimination was not timely filed; it was not filed within the 180/300 days period of limitations set forth in 42 UCS Sec.2000e-(5)(e)(i)" (docket entry 14). Again, in their motion for summary judgment (docket entry 51), they asked for dismissal of the discrimination claims, based on an EEOC notice to plaintiff dated May 23, 2000 that it could not investigate the charge because is was not filed within the time limit required by law.

In Vizier's second amended complaint, he refers to a May 30, 2000 Right–to–Sue letter. On June 14, 2004 we requested that he file a copy of this letter (docket entry 111). In response to our order, however, on June 17, 2004 plaintiff filed another copy of the same May 23, 2004 notice that the charge was untimely filed (docket entry 114). We, therefore, conclude that this is the only EEOC notice plaintiff received and that he never filed a timely charge with the EEOC.

Failure to exhaust administrative remedies bars the courthouse door, as courts long have recognized that Title VII's charge-filing requirement is a prerequisite to the commencement of a suit. *Bonilla v. Muebles J.J. Alvarez, Inc.* 194 F.3d 275, 278 (1st Cir.1999). "...[O]ne who seeks to recover for an asserted violation of Title VII must first exhaust administrative remedies by filing a charge with the EEOC ... within the prescribed limits." *Id.*

For the above stated reasons, the sex discrimination claim is DISMISSED for failure to exhaust administrative remedies.

SO ORDERED AND ADJUDGED.

### PARTIAL JUDGMENT

Pursuant to our Order of this same date the Vizier's claims under the First Amend-ment and the Due Process Clause, as well as his Title VII claims for retaliation and discrimination based on national origin, and any related supplemental claims brought under the local laws, barred under the doctrine of claim preclusion, are hereby DISMISSED.

SO ORDERED AND ADJUDGED.