# United States Court of Appeals
## For the First Circuit

No. 01-1538
No. 01-1570
No. 01-2325

SYSTEMS MANAGEMENT, INC.; VICTOR LABOY; JUAN AYALA;
JUAN ORTEGA; FORGET ME NOT SERVICES, INC.;
MARTIN RESTREPO; CESTLIO RODAS;
JOSE MIGUEL CRUZ; LUCIO ARDON,

Plaintiffs, Appellees/Cross-Appellants,

v.

KENNETH LOISELLE,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya and Lipez, Circuit Judges.

Matthew T. Oliverio with whom Christine M. Curley was on
brief for defendant.
Gabriel O. Dumont, Jr. with whom Dumont, Morris and Burke
was on brief for plaintiffs Jose Miguel Cruz, Lucio Ardon and
Systems Management, Inc.

September 10, 2002

BOUDIN, Chief Judge. In this case, the district court awarded damages and attorney's fees under the RICO statute against Kenneth Loiselle, sole owner and head of Aid Maintenance Co., Inc. ("Aid Maintenance").[1] The damages represented underpayments of wages due to two employees. Loiselle now appeals from the judgment; a competitor of the company, Systems Management, Inc., cross-appeals from the dismissal of its own RICO claim against Loiselle.

The raw facts are undisputed. In 1968 Loiselle founded Aid Maintenance, which provides janitorial services primarily in Rhode Island. In October 1994, the company won a contract to provide cleaning services at Massachusetts Bay Community College ("the college"), a unit of the Massachusetts State College System with campuses in Wellesley and Framingham. Neither the bidding invitation from the college nor the contract mentioned that the contractors had to pay no less than special minimum wages set under a Massachusetts statute that governed wages for the cleaning of public buildings.[2]

---

[1] RICO is the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (2000). Primarily designed as a criminal statute, see Selima, SPRL v. Imex Co., 473 U.S. 478, 498 (1985), RICO also provides civil remedies--including treble damages and attorney's fees--to anyone injured in his business or property by a prohibited act. 18 U.S.C § 1964(c).

[2] The Massachusetts Prevailing Wage Statute provides that locality wages be paid according to a formula. Mass Gen. Laws ch. 149, § 27H (supp. 1999). The statute also permits employees to sue in the event of a violation and recover treble damages and attorney's fees. Id.

In January 1995, Local 254 of the Service Employees International Union began to complain to the college about Aid Maintenance, which was not unionized. Initially, Local 254 asked that the contract be re-bid because it omitted, contrary to state law, a stipulation that the statutory prevailing wages would be paid. In May 1995, the college solicited new bids. In the meantime, Loiselle (by a written contract amendment dated February 1, 1995), agreed to pay the statutory prevailing wages. The rate was then $9.20 per hour in Wellesley and $8.60 in Framingham but the college initially told Loiselle that the lower Framingham rate could be paid for work on both campuses because the college business office was in Framingham.

According to the district court's later findings at trial, at the start of the amendment period Loiselle intended to pay the prevailing wages, hoping to make up the difference through efficiencies. However, the hoped for cost savings were not realized and, as part of the rebidding process, Loiselle learned that the higher $9.20 wage rather than the lower $8.60 one would have to be paid in regard to the Wellesley campus. In consequence, from June 1, 1995, onward, Loiselle knowingly used devices to underpay some of his workers at the college.

In particular, Loiselle paid wages below the required level to some cleaners assigned to extra college projects or to those who filled in for absent regular employees. In addition, after learning of the higher wages required at the Wellesley campus, Loiselle began reporting and paying his regular workers at

Wellesley nominally at the proper per hour rate but only for 5.75 hours a session even though they continued to work for 6 hours. On June 29, 1995, Aid Maintenance was awarded the re-bid contract and continued to provide service and to underpay workers, principally at the Wellesley campus.

Local 254 continued to complain that underpayments were occurring and, in June 1996, the college again re-bid the contract. Aid Maintenance again submitted the lowest bid, followed by a unionized company--Systems Management--which later became a plaintiff in this case. The college deferred the bid award while the underpayment charges against Aid Maintenance were investigated by the state. In January 1997, the college asked for new bids on the ground that the June 1996 bids were stale. Aid Maintenance declined to bid and the contract was won by a unionized company called AM/PM, which took over on March 1, 1997.

On April 7, 1999, the present RICO action was brought against Loiselle by individual employees claiming to represent a class of underpaid workers. The predicate criminal offenses alleged to trigger liability under RICO were acts of mail fraud by Loiselle, primarily furnishing false information to the college to the effect that the prevailing wages were being paid. Also named as a plaintiff was Systems Management, the disappointed bidder on the June 1995 contract. It claimed that absent Loiselle's false statements of compliance with the prevailing wage statute, Systems Management would have won the contract.

Thereafter, the district court rejected the request for class status and pared down the number of workers with potentially valid claims. Systems Management v. Loiselle, 138 F. Supp. 2d 78, 81 (D. Mass. 2001). In June 2000, the court held a six-day bench trial on the RICO claims of five workers and Systems Management. At the close of plaintiffs' evidence the court dismissed Systems Management's claim, saying that it could not show that "but for" the violations, it would have been the successful bidder. Id. at 90.

On March 19, 2001, the court issued its principal decision. Systems Management v. Loiselle, 138 F. Supp. 2d 78 (D. Mass. 2001). It found that from June 1, 1995, onward, Loiselle had committed acts of fraud by misrepresenting to the college that his company was paying workers the statutory prevailing wage; that documents containing such misrepresentations had been sent through the mails; and that these acts of mail fraud constituted "a pattern of racketeering activity" within the meaning of RICO, id. at 94. The court also found that RICO's other conditions for civil liability had been satisfied.

The court then ruled that two of the worker plaintiffs had in total suffered underpayments in the amount of $339.52 as a result of the fraud and, under the multiple damages provision, awarded them $1,018.56; thereafter attorney's fees of $184,231.75 were awarded. Incident to its liability determination, the court rejected Loiselle's argument that civil liability for mail fraud

-5-

under RICO required detrimental reliance by the injured persons. Id. at 95. Cross-appeals followed.

On Loiselle's appeal, he urges two colorable grounds as the basis for reversal of the judgment against him: that an injured plaintiff, seeking to recover under RICO for fraud, must demonstrate reliance on the fraudulent statements (which the plaintiffs here cannot do) and that RICO's "pattern of racketeering" requirement has not been satisfied. Loiselle also attacks the award of attorney's fees against him but this claim is mooted by our decision on liability.

We begin with the issue of reliance. The RICO statute itself says nothing about reliance as a requirement either for civil liability or for proof of damages. Civil damages, trebled and including attorney's fees, are provided to "any person injured in his business or property by a violation of section 1962." 18 U.S.C. § 1964(c). Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c).

On appeal, Loiselle concedes that he is a person with the required relationship to an enterprise--namely, his cleaning business carried on through Aid Maintenance and another company-- and that the interstate commerce requirement is met. The critical dispute concerns the phrase: pattern of racketeering activity."

"Racketeering activity" means any act violating one of many specified criminal statutes, including the federal mail fraud statute, 18 U.S.C. § 1341. See 18 U.S.C. § 1961(1). A "pattern of racketeering activity" "requires at least two acts of racketeering activity" occurring within ten years of each other. Id. § 1961(5).

Loiselle does not deny that more than one of his mailings violated the federal mail fraud statute. That statute condemns inter alia obtaining money by false representations. 18 U.S.C. § 1341 (2000). Here, the college continued its cleaning contract, and paid Loiselle's company for its services, based on his invoices and explicit representations that falsely indicated that Loiselle was complying with the prevailing wage statute. Accordingly, the requirement that there be "at least two acts of racketeering" (known in the jargon as "predicate acts") is satisfied.

Arguably, this fraud was the "but for" cause of injury to the workers. Loiselle is content to assume that, but for his false representations, the college would have insisted on compliance with the prevailing wage laws, so certain workers of his would have been paid for at least some of their work at a slightly higher rate. But, says Loiselle, and this is his first argument on appeal, the essence of civil fraud is reliance on deception, and there is no proof here that Loiselle ever made false statements to his workers or that they relied on his false statements to the college.

It is true that at common law a civil action for fraud ordinarily requires proof that the defrauded plaintiff relied upon the deception, and some courts have imported this requirement into

RICO actions where the predicate acts comprise mail or wire fraud.[3] But RICO bases its own brand of civil liability simply on the commission of specified criminal acts--here, criminal fraud--so long as they comprise a "pattern of racketeering activity"; and criminal fraud under the federal statute does not require "reliance" by anyone: it is enough that the defendant sought to deceive, whether or not he succeeded.  See Neder v. United States, 527 U.S. 1, 24 (1999) ("The common-law requirement[] of 'justifiable reliance' [has] no place in the federal fraud statutes.").[4]

Perhaps there is some surface incongruity in allowing a civil RICO plaintiff to recover for fraudulent acts even though the same plaintiff could not (for lack of reliance) recover for fraud at common law.  But Congress structured its civil remedy to allow recovery for harm caused by defined criminal acts, including

---

[3]See Chisolm v. TranSouth Financial Corp., 95 F.3d 331, 337 (4th Cir. 1996); Pelletier v. Zweifel, 921 F.2d 1465, 1499 (11th Cir. 1991); County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1311 (2d Cir. 1990); Brandenburg v. Seidel, 859 F.2d 1179, 1188 n.10 (4th Cir. 1988); Blount Financial Services, Inc. v. Walter E. Heller and Co., 819 F.2d 151, 152 (6th Cir. 1987).  But see Tabas v. Tabas, 47 F.3d 1280, 1294 n.18 (3rd Cir. 1995); Proctor & Gamble Co. v. Amway Corp., 242 F.3d 539, 564 (5th Cir. 2001).

[4]Whether criminal fraud at common law required reliance varied with the particular form of fraud.  See 2 LaFave & Scott, Substantive Criminal Law §§ 8.6-8.7 (1986) (discussing requirements for various forms of common law criminal fraud).  The crime of false pretenses might well be considered the "classical" criminal fraud at common law, see, e.g., William J. Stuntz, The Pathological Politics of Criminal Law, 100 Mich. L. Rev. 505, 547 & n.161 (2001), and that crime contains a reliance requirement, 2 LaFave & Scott, supra,(c).

violation of section 1341; and, as noted, the federal mail fraud statute does not require reliance. Thus, under a literal reading of RICO--the presumptive choice in interpretation--nothing more than the criminal violation and resulting harm is required.

This is not a conclusive argument; common law (and other) concepts can often be imported to flesh out a federal statute. Indeed, we assume here that Congress intended to require not only "but for" but also "proximate cause" to link the criminal act with the harm to the plaintiff, even though the statute says nothing specific on this point. But proximate cause--largely a proxy for foreseeability--is not only a general condition of civil liability at common law but is almost essential to shape and delimit a rational remedy: otherwise the chain of causation could be endless.

By contrast, reliance is a specialized condition that happens to have grown up with common law fraud. Reliance is doubtless the most obvious way in which fraud can cause harm, but it is not the only way: Loiselle does not deny that a reasonably predictable consequence of his mailings was, by deceiving the college, to enable him to continue to underpay his workers. There is no good reason here to depart from RICO's literal language by importing a reliance requirement into RICO.

This brings us to Loiselle's second claim on appeal, which presents a problem far more difficult than the reliance issue. From its phrasing (e.g., racketeering, enterprise, unlawful debt collection), as well as legislative history, we know that

Congress had organized crime in mind as its main RICO target. But Congress did not in its terms limit the statute to organized crime, adopting instead its "pattern" concept.[5] And despite early lower court cases urging a narrow construction, the Supreme Court has now twice flatly rejected such a limitation, stressing instead the flexibility and reach of the statute. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985); H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989).

Taking RICO's language literally, it could apply wherever an enterprise (which may well be a legitimate business) engages in two similar criminal acts within ten years of one another; the term "pattern" in other contexts means little more than a succession of similar or identical acts. Cf. Fed. R. Evid. 404(b). But the Supreme Court has recoiled at the idea of a federal civil remedy, with treble damages and attorney's fees, for every pair of similar acts within ten years of each other that might technically constitute a crime (e.g., isolated acts of "puffing" by a salesman) but often of a kind that would never be pursued criminally by a competent prosecutor, let alone through a criminal RICO prosecution.

---

[5]The Senate bill, which was the basis for the statute, included no civil liability provision and, if this had remained true, the disposition of most prosecutors to focus on serious crime would have avoided the problems now presented. But the House added the civil liability provision without any further precautions, possibly without realizing the degree to which civil litigants have different incentives from prosecutors. See generally, 1 Arthur F. Matthews, et al., Civil Rico Litigation, §§ 2.06-07 (2d ed. 1992).

In limiting the pattern concept, the Supreme Court says first that, to comprise a pattern, the two or more predicate acts must be "related," the criteria for relatedness being vague,[6] <u>H.J. Inc.</u>, 492 U.S. at 240, but, in addition, the acts must constitute or implicate a continuing threat of criminal behavior. <u>Id.</u> at 242. As any pair of similar criminal acts could be so described, <u>see</u> <u>id</u>. at 253 (Scalia, J., concurring), the Court was doubtless concerned with matters of degree (<u>e.g.</u>, harm, duration). But a complete list of criteria, and certainly any precise formula as to the degree of threat, remain elusive.

Still, the case law provides a few useful guidelines on the pattern requirement, and one is directly in point in this case: RICO is not aimed at a single narrow criminal episode, "even if that single episode involves behavior that amounts to several crimes (for example, several unlawful mailings). <u>Apparel Art Int'l., Inc.</u> v. <u>Jacobson</u> 967 F.2d 720, 723 (1st Cir. 1992) (Breyer, C.J.); <u>see also</u> <u>Fujisawa Pharmaceutical Co., Ltd.</u> v. <u>Kapoor</u>, 115 F.3d 1332, 1338 (7th Cir. 1997) (Posner, C.J.) (noting that if successive frauds "were installments in the sale of [a] company, the requirement of a pattern would probably not have been satisfied because the reality would have been that there was only a single

---

[6]The Court based its conception of relatedness on the definition provided in the Dangerous Special Offender Sentencing Act. 18 U.S.C. § 3575 <u>et seq</u>. <u>See</u> <u>H.J. Inc.</u>, 492 U.S. at 240 ("[C]riminal conduct forms a pattern [and is thus related] if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.") (quoting § 3575(e)).

fraud").  A single "scheme" may be reached by RICO, see H.J. Inc., 492 U.S. at 240-41, but only if it is reasonably broad and far reaching.

In our case, Loiselle's fraudulent effort to maintain his contract with the college, by comparatively trivial chiseling, is no worse than the efforts of the prime contractor in Apparel Art Int'l, Inc. to secure and maintain a single, albeit large ($96 million), Defense Department contract.  Although to do so, the contractor committed numerous criminal acts (bribes, false statements)--some more serious than anything in this case-then-Chief Judge Breyer said that these efforts were all addressed to one contract and did not comprise or threaten "the kind of 'continued' criminal activity at which the RICO statute was aimed." 967 F.2d at 724.  Other cases are to the same effect. See id.

Here, the district court said that "Loiselle's ongoing business procedures document a clear pattern of racketeering activity, and one that posed a real threat of continuing indefinitely with each successful contract bid."  138 F. Supp. 2d at 94.  If Loiselle had concrete plans to bid on contracts on other jobs and to carry them out through acts of mail fraud,  the "continuing threat" label would be supported, and the case would fit within what the Supreme Court has viewed as an "open ended" pattern of racketeering sufficient under RICO.  See H.J. Inc., 492

U.S. at 242-43. But neither the district court nor the plaintiffs have pointed to any such evidence of continuing threat.[7]

Rather, Loiselle took on the original contract without warning as to the prevailing wage requirement. When apprised, he first sought to abandon the contract and then chose to continue it as amended; by doing the same job in fewer hours, Loiselle hoped to meet the prevailing wage requirement. Then, in June 1995, after he won a new contract to continue providing services, his efforts at economy failed and he slid into acts of deliberate dishonesty to maintain this contract, offered a new (later mooted) bid partway through and then refused to bid again. The resemblance of this episode to the larger and more aggravated scheme held inadequate for a RICO violation in Apparel Art Int'l, Inc. controls this case.[8]

This might be a different case if the prevailing wage statute were one of those listed in RICO; in that event, the numerous individual underpayments themselves would have been separate predicate acts directed at a multitude of different workers. Cf. H.J. Inc., 492 U.S. at 242-43 (considering a protection racket with multiple victims). But it is no accident

---

[7]Plaintiffs seek to broaden the range of pertinent conduct by pointing to Loiselle's use of a second company to pay the reduced wages, But even assuming the use of the second company was improper, there is no direct connection between that contrivance and the misconduct at issue in this case.

[8]All of the fraudulent activity took place with respect to 1995-1996 contract. Prior to June 1, 1995, the district court found that Loiselle had not committed any fraudulent acts. 138 F. Supp. 2d. at 92-93. Loiselle did not obtain a new contract after June 1, 1995, and was replaced as the contractor by March 1997.

that the violations of state law that can be predicate acts under RICO are of a more serious character. <u>See</u> 18 U.S.C. § 1961(1) (<u>e.g.</u>, murder, robbery, extortion). And, of course, the state statute at issue here already provides for treble damages and attorney's fees.

Our decision that there was no violation moots the attorney's fees issue raised by Loiselle. By the same token, it requires that we deny the cross-appeal by Systems Management challenging the lower court's dismissal of its claim on causation grounds. The judgment of the district court is reversed and the matter remanded for dismissal of the complaint. Each side will bear its own costs on these appeals.

<u>It is so ordered</u>.