FREEPORT TRANSIT, INC., Provide–
A–Ride, Inc., and Robert
Zuschlag, Plaintiffs

v.

Jon MCNULTY, Chuck Baker and
Regional Transportation
Defendants

No. Civ.02–150–P–S.

United States District Court,
D. Maine.

Feb. 3, 2003.

Michael J. Waxman, Portland, ME, for Plaintiffs.

Jacqueline Rider, Valerie A. Wright, Verrill & Dana, Portland, ME, for Defendants.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

SINGAL, District Judge.

The United States Magistrate Judge filed with the Court on November 26, 2002 her Recommended Decision and filed her revised Recommended Decision on December 2, 2002. Defendants filed their objections to the revised Recommended Decision on December 19, 2002 and Plaintiffs filed their response to those objections on January 31, 2002. I have reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision, and determine that no further proceeding is necessary.

1. It is therefore *ORDERED* that the Recommended Decision of the Magistrate Judge is hereby *AFFIRMED*.

It is further *ORDERED* that Freeport Transit is permitted to conduct discovery keyed to the wire or mail fraud element of its RICO claim for sixty (60) days commencing this date. It is *ORDERED* that Freeport Transit is to submit a proper motion to amend and amended complaint addressing the deficiencies identified in the revised recommended decision at the expiration of the 60-day period. Failing that, this Court will dismiss Count I of the Complaint with prejudice and dismiss the remaining counts without prejudice. It is *ORDERED* that defendants may renew their motion to dismiss on the three state law in the event that the motion to amend is granted.

3. It is finally *ORDERED* that the motion to dismiss is *DENIED IN PART* as to Count I and ruling is *DEFERRED* on the four remaining counts for sixty (60) days.

## RECOMMENDED DECISION ON DEFENDANTS' MOTION TO DISMISS

KRAVCHUK, United States Magistrate Judge.

Plaintiffs sued Defendants on July 16, 2002, alleging a host of state law theories of liability and a single federal claim for racketeering activity injurious to Plaintiff Freeport Transit's business, brought pursuant to 18 U.S.C. § 1964(c), the civil remedies provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Defendants now move to dismiss the RICO count with prejudice and for dismissal without prejudice of the remaining, supplemental state law claims.

*Defendants' Motion to Dismiss with Incorporated Memorandum of Law,* hereinafter *"DMD,"* at 1. In the alternative, Defendants move to dismiss three of the four state law claims for failure to state claims for which relief can be granted. For the reasons stated herein, I recommend that the Court **DENY** the Motion to Dismiss **IN PART**, by allowing Plaintiffs an opportunity to amend the RICO claim after a brief period of discovery and by deferring its ruling on the state law claims in counts III, IV, and V until after the amended complaint has been filed.

### Facts as Alleged

■ Plaintiff Freeport Transit, Inc., Plaintiff Provide–A–Ride, Inc. and Defendant Regional Transportation Program, Inc. ("RTP") are private Maine corporations that provide transportation services to Medicaid recipients through a state program administered by the Department of Human Services. Plaintiff Robert Zuschlag is a citizen of Maine and an employee and officer of Freeport Transit and Provide–A–Ride. Defendants Jon McNulty and Chuck Baker are both employees and officers of RTP. Freeport Transit and RTP are both parties to provider agreements with the Department of Human services.[1] Pursuant to these agreements, they agree to provide transportation services to recipients of Medicaid in accordance with applicable Department regulations. Under the regulations, Freeport Transit and RTP qualify as "full service transportation providers." Freeport Transit and RTP are the only two full service transportation providers in Cumberland County.[2]

Among those Medicaid recipients who request transportation services are some who have specialized transportation needs. Certain non-ambulatory individuals, for example, who cannot be transported by means of conventional vehicles can receive wheelchair van services, which might be provided by either a full service transportation provider or by a separate "wheelchair van provider." The Department regulations require full service transportation providers to provide wheelchair van services whenever possible. If they are unable to do so, they may authorize non-full service wheelchair van providers in their "catchment area" to provide the service, but only if they first determine that no other full service transportation provider in the area can provide the service. The purpose of this requirement is to ensure that such services are provided at the least expense possible for the Department. Generally, full service transportation providers are able to provide wheelchair van services at less cost than so-called wheelchair van providers.

According to Plaintiffs, ever since Freeport Transit first became a full service transportation provider on January 12, 2000, RTP has referred numerous Medicaid recipients to wheelchair van providers in the area and/or has authorized wheelchair van providers to service said recipients, allegedly by telephone or telecommunications wire, without first inquiring

---

1. In addition to Plaintiffs' allegations, I have incorporated information found in the Department of Human Services' Maine Medical Assistance Manual. Although not explicitly cited in the Complaint, the Complaint depends on the Manual for certain allegations. The court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint … without converting the motion into one for

summary judgment." *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 32 (1st Cir.2000). The Manual was submitted by Defendants as an attachment to their Motion to Dismiss.

2. The Complaint provides no information regarding the significance or relationship Plaintiff Provide–A–Ride has to this action.

whether Freeport Transit could service the recipient at less cost to the Department. According to Plaintiffs, Defendants Baker and McNulty "have intentionally refused" to make any referrals to Freeport Transit. Complaint, ¶ 23. Additionally, Defendants Baker and McNulty are alleged to "have engaged in an anti-competitive scheme whereby they are contacting MaineCare/Medicaid members and ordering them to contact RTP–not Freeport Transit–whenever they need transportation services." *Id.*, ¶ 31.

Based principally [3] on these material allegations, Plaintiffs press five causes of action:

> *Count I:* A claim pursuant to 18 U.S.C. § 1962(c), the civil action provision of the Racketeer Influenced and Corrupt Organizations Act, premised on alleged acts of wire fraud, 18 U.S.C. § 1343.
>
> *Count II:* Defamation.
>
> *Count III:* "Interference with contractual or other advantageous economic relations."
>
> *Count IV:* A third-party beneficiary contract claim.
>
> *Count V:* A claim pursuant to 10 M.R.S.A. §§ 1101 et seq., Maine's antitrust statute.

### Rule 12(b)(6) Standard

A motion to dismiss pursuant to Rule 12(b)(6) constitutes a threshold challenge by one party to the adequacy of another party's claim or claims. The party filing such a motion contends that one or more of an opponent's claims is fundamentally flawed because the underlying allegations, even if true, fail "to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). When reviewing a 12(b)(6) motion, a court is generally required to (1) treat all of the non-movant's factual allegations as true and (2) draw all reasonable factual inferences that arise from the allegations and are favorable to the non-movant. *Carroll v. Xerox Corp.*, 294 F.3d 231, 241 (1st Cir.2002). In the end, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Such indulgences are granted to the non-movant pursuant to Rule 8, which requires of claimants only a "short and plain statement of the claim" sufficient to provide the adverse party with fair notice of the claim and the grounds on which it rests. Fed. R.Civ.P. 8(a)(2); *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Rule 12(b)(6) does not provide an avenue for defendants to challenge the underlying merits of a case. *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992 ("[N]otice pleading ... relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."); *see also* Fed.R.Civ.P. 12(e) (authorizing a party to request a "more definite statement" in circumstances where fair notice is lacking). Rather, Rule 12(b)(6) is designed to raise *legal* challenges to a claim, typically based on the inclusion within a Complaint of facts that are damning to a claim or on the inability or failure of the claimant to plead facts that are necessary to a claim. Notwithstanding the foregoing, Rule 9 imposes a heightened pleading standard with regard to certain types of factual allegations, including allegations of fraud. Where fraud is a necessary element of a claim, "the circumstances constituting

---

**3.** Additional allegations material to the defamation claim are not included here because Defendants have not challenged Count II in their Motion.

fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). Thus, unless a legal right exists for a claimant to conduct discovery and amend his or her allegations prior to dismissal, a fraud claimant must be prepared at the very commencement of his or her case to present allegations of fraud that are specific with respect to time, place and content.[4] This requirement applies to RICO claims that are premised on mail or wire fraud, but only to the fraud allegations not to every element of the RICO claim. *New England Data Servs., Inc. v. Becher,* 829 F.2d 286, 289 (1st Cir. 1987). Thus, would-be RICO claimants may not me rely allege that fraudulent statements were made by mail or by wire, but must also set forth the time, place and content of any alleged fraudulent statements with specificity. *Id.* at 291.

### Discussion

### A. The Civil RICO Claim (Count I)

■ RICO permits "[a]ny person injured in his business or property" by a pattern of racketeering activity to sue the racketeer in federal court for treble damages. *Id.,* § 1964(c). To be liable, a RICO defendant must have participated or be participating in the alleged racketeering activity while conducting the affairs of an "enterprise" with which he is affiliated or employed and such activity must affect interstate commerce. 18 U.S.C. § 1962(c). An enterprise "includes any individual, partnership, corporation, association, or other legal entity," as well as any association of individuals, whether or not they operate through a legal entity. *Id.,* § 1961(4). Importantly, the RICO "enterprise" is itself never a proper RICO defendant. Rather, it is the persons[5] conducting racketeering activity through the enterprise who are liable. *Miranda v. Ponce Federal Bank,* 948 F.2d 41, 44–45 (1st Cir.1991) ("[T]he same entity cannot do double duty as both the RICO defendant and the RICO enterprise.")

■ A "pattern of racketeering activity" consists of "at least two acts of racketeering activity" within a ten year period, 18 U.S.C. § 1961(5), often referred to as the "predicate acts" or "predicate crimes." *Miranda,* 948 F.2d at 45. The predicate crimes that can support a RICO claim are catalogued at 18 U.S.C. § 1961. For the defendant to be liable, it is not necessary that he or she be convicted of the predicate crimes, only that he or she could be indicted for the predicate crimes. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 486–88, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); 18 U.S.C. § 1961 (defining racketeering activity as conduct that is "chargeable," "indictable" and "punishable" under certain statutes). Nor is it necessary that the predicate crimes be the same; they need only be related in purpose and "reflect or threaten" ongoing racketeering activity. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238–39, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Finally, a RICO

---

4. There are three primary justifications for this treatment of fraud allegations: "(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext for discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations." *New England Data Servs., Inc. v. Becher,* 829 F.2d 286, 289 (1st Cir. 1987).

5. RICO defines "person" as "any individual or entity capable of holding a legal or beneficial interest in property[.]" 18 U.S.C. § 1961(3). Importantly, the Supreme Court has stated that RICO liability is not limited to perpetrators of traditional organized crime, but may extend to individuals and entities otherwise engaged in legitimate business endeavors. *H.J.,* 492 U.S. at 244–249, 109 S.Ct. 2893.

claimant must establish a causal relationship between the pattern of racketeering activity and his asserted injury. *Sedima*, 473 U.S. at 496–97, 105 S.Ct. 3275.[6]

Without adhering to the order in which the arguments are raised, Defendants contend that Freeport Transit has failed to state a RICO claim for the following reasons:

(1) because the material allegations in the Complaint are based "upon information and belief" rather than upon specified facts, *DMD* at 9;

(2) because there is no RICO "enterprise" existing apart from the RICO defendants, *id.* at 15–16;

(3) because the conduct complained of does not affect interstate commerce, *id.* at 16–17;

(4) because the conduct complained of is not criminal or indictable, *id.* at 12;

(5) because the Complaint fails to allege a "pattern" of racketeering activity that amounts to or threatens broad or ongoing criminal activity, *id.* at 13–14,

(6) because the Complaint does not describe the predicate acts of wire fraud with sufficient particularity under Rule 9(b), *id.* at 12–13;

I address each argument in turn.

### 1. Pleadings based upon information and belief are generally sufficient.

■ Plaintiffs gratuitously reveal in their Complaint that certain of the substantive allegations, unlike others, are based only "upon information and belief." *Complaint*, ¶ 23–32. This revelation does not give Defendants ground to seek a dismissal. Pleadings based upon information

and belief are expressly authorized by the Rules of Civil Procedure. Fed.R.Civ.P. 11(a) ("The signature of an attorney or party constitutes a representation by the signer ... that to the best of the signer's knowledge, information, and belief there is good ground tò support it. ..."). Counsel's decision to expressly state that the allegations are made upon information and belief is stylistic and does not make the related allegations any less significant.

### 2. RTP is the alleged enterprise.

■ The manner in which Plaintiffs' Complaint posits RTP as the RICO enterprise is sufficient for purposes of notice pleading. Plaintiffs do not pursue the RICO claim against RTP, but only against Defendants McNulty and Baker, who are alleged to be conducting racketeering activity *through* RTP. *Complaint* at 5 (Count I). This challenge to the RICO claim has no more forward momentum than the last. The existing allegations adequately place Defendants on notice that RTP is the alleged enterprise.

### 3. The alleged wire fraud affects interstate commerce.

■ In addition to the alleged use of telecommunications lines to commit wire fraud, Freeport Transit argues that RTP affects interstate commerce because the RICO defendants' racketeering activity misappropriates and misdirects federal monies spent by the State of Maine on transportation services; because these transportation services are provided, in part, on federal highways; and because the transportation services ultimately lead to the provision of medical services by

---

**6.** The First Circuit frequently lists the elements of a § 1962(c) claim in shorthand, stating that a claimant need only show "(1) conduct (2) of an enterprise (3) though a pattern (4) of racketeering activity." *See, e.g., Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 41 (1st Cir.1991).

health care providers, who are themselves engaged in interstate commerce.

Defendants' 12(b)(6) van is still at the station. Plaintiffs' allegations of wire fraud alone implicate interstate commerce. *Cf. United States v. Gilbert*, 181 F.3d 152, 157–158 (1st Cir.1999) (rejecting defendant's argument that a bomb threat cannot be prosecuted federally in the absence of evidence "the telephone system used was more than an intrastate system" because "a telephone is an instrumentality of interstate commerce and this alone is a sufficient basis for jurisdiction based on interstate commerce.") Use of wire communications in the manner set forth in Plaintiffs' Complaint affects interstate commerce as a matter of law, according to the First Circuit Court of Appeals. Furthermore, the alleged racketeering activity affects the manner in which federal monies are spent. *See, e.g., United States v. Davis*, 707 F.2d 880, 884 (6th Cir.1983) (involving diversion of federal funds); *United States v. Huynh*, 60 F.3d 1386, 1389 (9th Cir.1995) (same).

### 4. *The conduct complained of constitutes indictable wire or mail fraud.*

■■■■■ "To prove wire or mail fraud, the government must show: (1) a scheme [or artifice] to defraud by means of false pretenses; (2) the defendant's knowing and willing participation in the scheme with the intent to defraud; and (3) the use of interstate wire or mail communications in furtherance of the scheme." *United States v. Martin*, 228 F.3d 1, 15 (1st Cir. 2000). Schemes or artifices to defraud "include everything designed to defraud by [material] representations as to the past or present, or suggestions and promises as to the future," *Durland v. United States*, 161 U.S. 306, 313, 16 S.Ct. 508, 40 L.Ed. 709 (1896). *See also Neder v. United States*,

527 U.S. 1, 24, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (incorporating the materiality element of common law fraud).

■■■■■ In their motion, Defendants argue that the alleged conduct does not amount to indictable wire or mail fraud. *DMD* at 12. However, other than describing the elements of these crimes, Defendants do not attempt to explain how the alleged conduct is non-fraudulent as a matter of law. Instead, Defendants ultimately repeat the Rule 9(b) mantra that the fraud allegations are not time-, place- or content-specific. In response, Plaintiffs make the following argument:

Defendants fraudulently created and disseminated approval/trip numbers to Wheelchair Van Providers. This fraud was perpetrated in order to channel service calls away from RTP's main competitor, Freeport Transit, and to harm Freeport Transit financially. The fraud was also perpetrated against Medicaid and the citizens of the State of Maine [because Wheelchair Van Providers is more expensive than Freeport Transit and] each service call cost DHS, Medicaid and the United States Government more than it otherwise would have or should have. Each time RTP disseminated an approval/trip number to a Wheelchair Service Provider, it was implicitly or explicitly representing [falsely] that it had in fact attempted to refer the call to another Full Service Provider. . . .

Plaintiffs thus argue that although the ultimate intent of the alleged scheme was to injure Freeport Transit, the actual fraud was perpetrated on those governmental entities paying for the transportation services. Although the relatively attenuated nature of this claim would seem to pose a problem for Plaintiffs, both the wire fraud statute and the civil RICO ac-

tion sweep broadly. Working together, they gather up Freeport Transit's claim.

■ First, a civil RICO claim can be maintained even when the claimant is not the direct victim of racketeering activity. The only requirement is that the alleged pattern of racketeering activity cause injury to the claimant. 18 U.S.C. § 1964(c); *Systems Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 104 (1st Cir.2002) ("[U]nder a literal reading of RICO–the presumptive choice in interpretation–nothing more than the criminal violation and resulting harm is required.").

Second, § 1961(1)(B) requires only that the predicate acts of wire or mail fraud be "indictable"; it is not necessary that the pleadings conclusively establish guilt. *Id.*, § 1961(1)(B).

■ Third, § 1343's "scheme or artifice to defraud" is broad, encompassing all forms of misrepresentations that deprive another of material information and are designed to deceive. *Loiselle*, 303 F.3d at 104.

■ Fourth, even if the Defendants' alleged conduct was not *motivated* by a desire to defraud the government,[7] "[m]ens rea is generally satisfied … by any showing of purposeful activity, regardless of its psychological origins." *United States v. Pohlot*, 827 F.2d 889, 904 (3rd Cir.1987); *see also United States v. Schneider*, 111 F.3d 197, 203 (1st Cir.1997). Thus, if the Defendants knew that the misrepresentation or concealment of material information would cause financial injury to the governmental entities footing the bill for transportation services, an indictment could be returned.

Finally, the allegations in their current form can support an inference that the Defendants' were engaged in a scheme to defraud. In its role as a full service transportation provider, RTP must abide by regulations promulgated by the Department of Human Services and must be "Medicaid-enrolled." Maine Medical Assistance Manual, Chapter II, § 113.01–2. The provision of Medicaid-related transportation services to Medicaid recipients necessarily depends on the cooperation of enrollees such as RTP for its efficient administration. The governing regulations require these providers to not only determine the Medicaid-eligibility of individuals seeking transportation services, but to refer these individuals to other providers of transportation services when such services are "the least expensive, to the Department," and are suitable to the recipient's medical needs. *Id.*, §§ 113.06–1 & 113.06–2. For example, full service transportation providers are entrusted with "arranging" transportation requests by, among other things, ensuring that wheelchair van services are provided only when "conventional transportation services" are unavailable or unsuitable. *Id.*, §§ 113.06–2 & 113.04–7. Thus, the full service transportation provider may refer the client to a wheelchair van service only if it is "unable to perform the service, and all other full-service providers in [its] region are unable to perform the service." *Id.* This language clearly places a duty on the full service transportation provider to ensure that other full-service providers in its region cannot serve a client before that client is referred to a wheelchair van provider. The referral to the wheelchair van provider and the bill that ultimately follows implies to the Department that the full service transportation provider has performed all duties that are preconditions to the provision of such wheelchair van services. The Department

---

**7.** Obviously, there was no specific intent to defraud any wheelchair vehicle providers.

The alleged scheme directly benefits these providers.

is materially mislead to its injury when the referral is made in the absence of regulatory compliance and leads to the provision of more expensive services than are required.

The allegations in this case assert that Freeport Transit and RTP are in the same region, that for more than two years RTP has not made a single referral to Freeport Transit but has made repeat referrals by wire to wheelchair van providers in circumstances where Freeport Transit could have serviced the request, ostensibly at less cost to the Department. *Complaint,* ¶¶ 16, 21–26. These allegations support the inferences required for a finding of probable cause that the Defendants engaged in a scheme or artifice to defraud, which are: that they intentionally ignored the Department's regulations; that they referred, arranged, authorized or approved wheelchair van services where such services should have been provided by Freeport Transit at less cost; and that they knew such conduct would work to materially mislead the Department and lead to its financial detriment.

The Defendants rejoin that they simply refer requests to wheelchair van providers and do not issue authorization codes for the wheelchair van providers to bill the Department. *Defendants' Reply Memorandum,* hereinafter *"DRM"* at 2. This argument takes issue with the way Plaintiffs have framed their Complaint, which suggests that RTP issued fraudulent "approval codes" to the wheelchair van providers. Whether or not "authorization codes" are "issued" by RTP does not make or break the RICO claim. If the allegations are true, the Department will ultimately be defrauded once the request is referred to the wheelchair van provider

because the referral itself constitutes an "approval" and also constitutes a misleading representation or intentional concealment of material facts.

**5. *The Complaint* generally *alleges a pattern of racketeering activity that amounts to or threatens broad or ongoing criminal activity.***

To satisfy RICO pleading requirements, the RICO claimant must demonstrate the existence of a "pattern" of racketeering activity. The claimant must allege facts that demonstrate not only the occurrence of two or more predicate acts, but also that the predicate acts are (1) related in purpose and (2) reflect or threaten ongoing criminal activity (so-called "continuity"). *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238–39, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Relatedness is readily shown where the predicate acts "have the same or similar purposes, participants, victims, or methods, or otherwise [are] interrelated by distinguishing characteristics." *H.J.,* 492 U.S. at 240, 109 S.Ct. 2893; *see also Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 44 (1st Cir.1991) ("The relatedness test is not a cumbersome one for a RICO plaintiff."). Continuity "is . . . centrally a temporal concept." *H.J.,* 492 U.S. at 242, 109 S.Ct. 2893. It can be shown in one of two ways. If the criminal enterprise has concluded, continuity can be shown where the related predicates amounted to continued criminal activity over an extended period of time as opposed to a "single narrow criminal episode," *Loiselle,* 303 F.3d at 105; *see also Feinstein,* 942 F.2d at 45 (explaining that RICO was intended to apply "only to enduring criminal conduct").[8] Otherwise, where the criminal en-

---

8. Predicate acts of racketeering activity can be related and can reflect continuity even though predicate acts are separated by ex-

tended periods of apparent *inactivity.* To satisfy the RICO pleading requirements, the last predicate act need only have occurred within

terprise is extant, a claimant may allege facts showing that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] ... are part of an ongoing entity's regular way of doing business." *H.J.*, 492 U.S. at 242, 109 S.Ct. 2893. Unlike concluded racketeering activity, threatened racketeering activity may be found where the predicate acts occurred over only a narrow timeframe. *Feinstein*, 942 F.2d at 45.

■ Plaintiffs' general allegations satisfy the relatedness and continuity requirements. Each alleged act of wire fraud has the same purpose, participants, victims, and method. Furthermore, the allegations speak not only to enduring past activity–the enterprise is alleged to have persisted for more than two years–but also suggest the likelihood of continuing activity.

Defendants argue that the Complaint fails to establish the existence of a pattern because there is insufficient continuity in Freeport Transit's allegations of "more than two" instances of wire fraud. DMD at 13–14. They rely on *Efron v. Embassy Suites, Inc.*, 223 F.3d 12 (1st Cir.2000), *Al–Abood v. El–Shamari*, 217 F.3d 225 (4th Cir.2000), and *U.S. Textiles, Inc. v. Anheuser–Busch Cos.*, 911 F.2d 1261 (7th Cir. 1990). Of these three cases, only *Efron* addressed a motion to dismiss. *Al–Abood* addressed a post-trial motion for judgment as a matter of law and *U.S. Textiles* addressed a motion for summary judgment. The defense-favorable result in each case hinged on the "continuity" component of a RICO claim. All involved concluded schemes as opposed to extant schemes.

■ In *Efron*, the First Circuit joined with certain other circuit courts of appeals and inserted into the continuity element more than just the temporal concerns prescribed by the Supreme Court in *H.J.*, 223 F.3d at 18. Essentially, the First Circuit held that where the duration of a closed pattern of activity is more than a few weeks or months but "not so far beyond [that time frame] that common sense compels a conclusion of continuity," other factors should also be weighed, including the number of victims, the number of schemes, and the "extensiveness" of the alleged scheme or schemes. *Id.* Thus, although a singular scheme [9] can support a civil RICO claim and continuity is "centrally a temporal concept," *H.J.*, 492 U.S. at 242, 109 S.Ct. 2893, in this Circuit continuity can also hinge, sometimes, on the number of schemes alleged and their extent. Ultimately, the Court in *Efron* affirmed the district court's dismissal because the 21–month time period at issue in *Efron* was too short to make the existence of continuity a matter of "common sense" and "[t]he three named victims were not separately targeted through repetitions of criminal conduct, which could have reflected persistent or broad-based crime," but were instead simultaneously harmed "from a single set of alleged misdeeds." 223 F.3d at 18. In the Court's view, "the finite nature of the racketeering activities alleged here, together with their occurrence over a relatively modest period of time, cannot ... support a jury finding of a RICO pattern under the '*closed*' continuity approach." *Id.* at 19 (emphasis added). Notably, the *Efron* case was only analyzed as one involving a closed pattern of criminal activi-

10 years of the immediately prior act. 18 U.S.C. § 1961(5). This possibility is not raised by the pleadings in this case.

9. "[I]t is implausible to suppose that Congress thought continuity might be shown only by proof of multiple schemes." *H.J.*, 492 U.S. at 240, 109 S.Ct. 2893.

ty, rather than one which threatened ongoing criminality. *Id.*

Although not addressed by the parties, a recent First Circuit opinion is also instructive. In *Systems Management, Inc. v. Loiselle,* the First Circuit reiterated that "[a] single 'scheme' may be reached by RICO ... only if it is reasonably broad and far reaching." 303 F.3d at 105. Like the cases cited by the parties, *Loiselle* concerned a concluded scheme to defraud, not an extant scheme. The evidence presented at a bench trial revealed that the defendant conducted the alleged RICO enterprise by, among other things, engaging in repeated acts of mail fraud designed to hide its material breach of a service contract with a certain Massachusetts college. *Id.* at 101–102. Though the enterprise succeeded in maintaining the contract for in excess of a year by repeatedly misrepresenting certain material facts related to the wages it paid to workers, the enterprise eventually declined to re-bid on the project. *Id.* at 102. The court found in favor of the worker claimants on their RICO claim, concluding, among other things, that the defendant engaged in a scheme to defraud the college and that various fraudulent documents sent to the college constituted a pattern of racketeering activity. *Id.* at 102–103. The First Circuit reversed, concluding that even though the trial court's factual findings fell squarely within the pale described in RICO, the defendant's "comparatively trivial chiseling ... efforts were all addressed to the one contract and did not comprise or threaten the kind of continued criminal activity at which the RICO statute was aimed." *Id.* at 105–106 (internal quotation marks omitted).[10] Before entering its

mandate, however, the Court observed, "If [defendant] had concrete plans to bid on contracts on other jobs and to carry them out through acts of mail fraud, the 'continuing threat' label would be supported, and the case would fit within what the Supreme Court has viewed as an 'open ended' pattern of racketeering sufficient under RICO [to support a claim]." *Id.* at 106.

Defendants contend that "Plaintiff's vague allegations of 'more than two' acts committed over a period of, at most, two and one-half years, do not satisfy the closed-ended time test" because "Plaintiffs' complaint envisions only one scheme with one objective...." *DMD* at 14. "Likewise," they implore, "the [C]omplaint does not sufficiently allege an open-ended, continued threat of racketeering, particularly because of Plaintiffs' thin reliance on wire and/or mail fraud as the only alleged predicate act.... The acts alleged ... simply do not constitute ... a threat to society or ... warrant treble damages." *Id.* at 14–15.

Contrary to Defendants' position, the general allegations in the Complaint do at least suggest an ongoing pattern of racketeering activity. Almost all of the allegations are coined in what current or former English majors might recognize as the present perfect tense (e.g., "Jon McNulty and Chuck Baker ... have ... refused to make any referrals to Freeport Transit."). Often, the present perfect tense suggests conduct that concluded sometime in the indefinite past, but it just as often intimates that such conduct will continue in or into the future (e.g., "We have given consideration to your proposal," or "The chil-

---

**10.** The Court's holding was fairly dictated by its prior determination of *Apparel Art Int'l, Inc. v. Jacobson,* 967 F.2d 720 (1st Cir.1992), which involved somewhat more egregious efforts by a contractor to secure and maintain a single government contract. *Loiselle,* 303 F.3d at 105–106.

dren have eaten some dinner.").[11] In this way, the material allegations "have raised" (and continue to raise) the threat of ongoing criminal conduct. This reading is supported by Plaintiffs' memorandum, which speaks of ongoing injury. ("The consequences of this fraudulent conduct are that . . . Freeport Transit . . . *obtains* less business and . . . the MaineCare regulations *are* violated." *PMO* at 4.).

The fact that the alleged pattern of racketeering activity continues serves to remove this case from exclusive consideration under *Efron* and *Loiselle*. Instead, the question of continuity now becomes whether "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] . . . are part of an ongoing entity's regular way of doing business." *H.J.*, 492 U.S. at 242, 109 S.Ct. 2893. Accepting, as is alleged, that Defendants never intend to comply with the regulatory framework, and inferring that they will continue to receive requests for transportation and refer the requests to wheelchair van providers without first referring them to Freeport Transit, thereby perpetuating a fraud on the Department, there exists both a specific threat of repetition and also a sufficient suggestion that the predicate acts are part of the enterprise's regular way of doing business.

Before turning to the last RICO-related issue, it bears mentioning that Plaintiffs' allegations are not merely suggestive, as Defendants argue, of conduct posing no real threat to society. *DMD* at 14–15. If true, these allegations reflect a serious abuse of the public trust in the administration of the MaineCare program. As Medicaid enrollees, RTP and Freeport Transit are not merely engaged in marketplace competition. They are engaged in the ad-

ministration of a public benefit that is paid for with public funds. Thus, even if the Complaint concerned only past conduct, it is by no means certain that Defendants' motion would be granted. Though there exists but one alleged scheme, the duration is appreciable. Furthermore, unlike *Efron* and *Loiselle*, this case does not concern only one victim. The alleged scheme results in a financial detriment to the public treasury, as well as to Freeport Transit.

### 6. The Complaint does not allege the predicate acts of wire fraud with sufficient particularity, but leave should be granted to amend the Complaint following a brief period of discovery.

Although Plaintiffs have generally alleged sufficient facts to satisfy the notice pleading standard of *Swierkiewicz*, general allegations will not suffice with regard to their allegations of wire fraud, which must meet Rule 9's heightened pleading standard. Instead, Plaintiffs must specify the time, place and content of the communication alleged to constitute wire fraud. *Becher*, 829 F.2d at 291.

Although Plaintiffs do not exactly concede that their fraud allegations are insufficient in their current state, they wisely request an opportunity to conduct the discovery that might enable them to allege with particularity the time, place and content of the subject communications. There is some justification for granting such leave pursuant to *Becher*, considering that Freeport Transit was not a party to the communications and does not have a nonadversarial means of obtaining the necessary information. Defendants nevertheless insist that discovery is not warranted because the information Plaintiffs require

---

**11.** *See, e.g.,* http://www.ultralingua.net ("The present perfect describes an action or emo-

tion which began in the past and which continues in the present.").

was not "exclusively" in Defendants' control, also being in the possession of certain wheelchair van providers with whom RTP staffers communicated.

 In cases where Rule 9(b) is not satisfied, dismissal of the complaint is not mandatory. *Id.* at 290. Whether the Rule 9(b) violation should be followed by dismissal or discovery is governed, in this Circuit, by the following principles:

> The district court ... must view ... as a whole ... the general scheme to defraud, the establishment of interstate commerce and the resulting implication of the use of interstate wires and mails, [the existence of] multiple defendants and whether the communications were between the defendants solely or between the defendants and the plaintiffs, which would affect the final factor of whether the facts were peculiarly within the defendants' control. In addition to these factors, the court must keep in mind the purpose of Rule 9(b), including avoiding groundless claims and strike suits, the potential damage to a defendant's reputation, especially if the underlying RICO claim is based on criminal activities, and ensuring that defendants have been adequately put on notice to enable them to give meaningful responses.... On the other side of the scale, the court should note the policy in favor of allowing amendments and trying cases on their merits, and against dismissals which would deny plaintiffs their day in court.

*Becher,* 829 F.2d at 291–92. On balance, Plaintiffs have outlined the contours of a fraudulent scheme, which suggests a fair probability that the details can be uncovered in discovery.

Defendants insist that leave to amend following discovery is not appropriate here because the particulars regarding the sub-

ject phone communications are not "exclusively" in their control, having involved wheelchair van providers as well. Although the First Circuit uses the term "exclusive control" at one point in the *Becher* opinion, it is in the context of providing an example of facts that might justify an opportunity to conduct discovery and amend. *Id.* at 290. In a subsequent passage, the Court states its holding thusly:

> Although this circuit court declined to consider as a factor whether the facts are *peculiarly* within the defendant's control in a securities fraud case, we include it as one factor in regards to the particular uses of mail or wire in a mail and wire fraud case which otherwise alleges detailed facts that make it seem likely that interstate mail or telecommunications facilities were used.

*Id.* at 291 (emphasis added). In this case, as in *Becher,* Plaintiffs were not directly involved in the alleged fraudulent acts. *Id.* Also, as in *Becher,* Plaintiffs have "provided an outline of the general scheme to defraud and established an inference that the mail or wires [were] used to transact this scheme." *Id.* I acknowledge that this case differs from *Becher* in the sense that the communications alleged herein involved third parties. However, that fact alone does not mean Plaintiffs can be expected to have access to the information they need to comply with Rule 9(b). Businesses are not in the practices of voluntarily divulging their records to one another, particularly to support litigation against a party on whom they depend for business. Nor is there any suggestion that the necessary facts exist in a database maintained by the state, to which Plaintiffs would have had access prior to commencing this litigation.

On balance, it is my opinion that Plain-

tiffs [12] should be afforded 60 days in which to conduct discovery focused on the time, place and content of the alleged wire or mail fraud. In this regard, my recommendation is that Plaintiffs be required to file a motion to amend and an amended complaint at the expiration of the 60–day period, which amended complaint must set forth the time, place and content of *every* alleged predicate act of wire or mail fraud. Defendants who are impugned with wire or mail fraud are entitled to notice of each and every communication which Plaintiffs believe is capable of supporting a criminal indictment so that they may contest these allegations in the context of a subsequent dispositive motion *Feinstein,* 942 F.2d at 42 ("[I]t is not enough for a plaintiff to file a RICO action, chant the statutory mantra, and leave the identification of predicate acts to the time of trial."). In addition to these elaborations, Plaintiffs need to clarify what the nature of the allegedly fraudulent communications was, that is, how exactly did the client's request for services get routed from RTP to the wheelchair van provider in each given instance,[13] and how did this act materially deceive or mislead and injure the Department.

## B. The State Law Claims

The Plaintiffs have filed four additional counts alleging state law claims. The defamation claim is not contested by Defendants and therefore would survive the motion to dismiss if this court elected to exercise its supplemental jurisdiction at this juncture and rule upon the other pending state claims. Ultimately, if the RICO count is not plead with sufficient particularity, the court could dismiss all four counts without prejudice and decline to exercise supplemental jurisdiction. For this reason, I believe that it would be prudential to defer ruling on the remaining counts of the complaint until the Plaintiffs have filed their motion to amend and proposed amended complaint.

## Conclusion

For the foregoing reasons, I recommend that the Court permit Freeport Transit to conduct discovery keyed to the wire or mail fraud element of its RICO claim during the 60–day period commencing with the Court's entry of its order on this motion, and ORDER Freeport Transit to either (1) submit a proper motion to amend and amended complaint addressing the pleading deficiencies identified herein or (2) voluntarily dismiss Count I of its complaint at the expiration of the 60–day period.[14] I would therefore recommend that the Court **DENY–IN–PART** the motion to dismiss as to Count I and defer its ruling on the four remaining counts for sixty days.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A respon-

---

**12.** Although Plaintiffs collectively pursue the RICO claim, they have conceded that only Freeport Transit can maintain it because Freeport Transit is the only plaintiff injured by the alleged racketeering activity.

**13.** Were the requests for services "referred," "approved," "authorized" or were they otherwise "arranged?"

**14.** Should the Court agree with the recommendation I will immediately hold a scheduling conference to address the timing *and* scope of Plaintiffs' discovery.

sive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

November 26, 2002.